EDWIN ARTHUR GRAY, Appellant, v. THE BOARD OF SUPER-
VISORS OF TOMPKINS COUNTY, Respondent.

A county is not liable for the misappropriation by its county treasurer of
funds belonging to an infant, deposited with said treasurer, in pursuance
of the act of 1848 (Chap. 277, Laws of 1848); at least in the absence of
evidence that the funds were in some way used or applied for the benefit
of the county.

As to whether a recovery could be had against a county on proof that the
county treasurer did apply the funds for its use or benefit, quære.

Where a money judgment is reversed in toto by the General Term, under
the stipulation required on appeal to this court, if the order of reversal
is affirmed, judgment absolute against appellant must be directed,
although the evidence would have justified a judgment for a less amount
than that rendered.

(Argued June 27, 1883; decided November 20, 1883.)

APPEAL from order of the General Term of the Supreme
Court, in the third judicial department, made January 24,
1882, which reversed a judgment in favor of plaintiff, entered
upon the report of a referee. (Reported below, 26 Hun, 260.)

The nature of the action and the material facts are stated in
the opinion.

S. D. Halliday for appellant. Money paid into the county
treasury becomes at once the money of the county. (1 R. S.
[6th ed.] 893, § 139; Laws of 1877, chap. 436; Laws of
1879, chap. 447; Hill v. Supv'rs Liv. Co., 12 N. Y. 52,
61; Newman v. Supv'rs Liv. Co., 45 id. 676, 686.) Plaintiff
was not prevented from recovering in this action because the
money had lost its identity. (Southwick v. B'k of Memphis,
84 N. Y. 435; Hathaway v. Town of Cincinnatus, 62 id.
434; Horn v. Town of New Lots, 83 id. 100.) The identity
of a sum of money or debt does not consist of the pieces of
coin, but in the fund, which may be followed as long as its
identity can be traced. (Disbrow v. Mills, 2 Hun, 132, 134;
Hill. on Trustees, 164; Matter of Julius Le Blanc, 14 Hun,
8; Matter of Van Duzer Estate, 51 How. 410; Thompson v.

*Perkins*, 3 Mason, 232; *Van Allen* v. *Am. Nat. B'k*, 52 N. Y. 7; *Taylor* v. *Plumer*, 3 M. & S. 562.) If the relations of the county treasurer to the various funds in his possession is not that of a debtor, then this plaintiff is entitled to recover. (*Horn* v. *Town of New Lots*, 83 N. Y. 100; *Hathaway* v. *Cincinnatus*, 62 id. 434; *Newman* v. *Supv'rs of Livingston Co.*, 45 id. 676; *Hill* v. *Supv'rs of Livingston Co.*, 12 id. 61.)

*Merritt King* for respondent. If money paid or deposited with a county treasurer is embezzled, converted or lost, the only remedy of the owner thereof is by an action against such treasurer and his sureties. (*Perly* v. *County of Muskegon*, 32 Mich. 132; 20 Am. Rep. 637, 639, 645; 2 Dillon on Municipal Corporations [3d ed.], § 974; *Supv'rs of Livingston Co.* v. *White*, 30 Barb. 73; *Townsend* v. *Everett*, 4 Ala. 607.) The treasurer had no right to sell one of the mortgages in which the plaintiff's funds were invested, without the order of the court, and his assignment could have conveyed no title to the purchaser. (*King* v. *Talbot*, 40 N. Y. 76; *Farmers' Loan & Trust Co.* v. *Walworth*, 1 id. 443; Laws of 1859, chap. 386.)

EARL, J. The plaintiff, an infant, was the owner of certain real estate situate in the county of Tompkins, which was sold under the statutes relating to the sale of the real estate of infants, by proceedings in the Supreme Court, and the proceeds, amounting to nearly $800, were, by the order of the court, deposited with the county treasurer of the county, to be by him invested for the benefit of the infant until he should arrive at the age of twenty-one years, the interest in the mean time to be annually paid to his general guardian.

The county treasurer, after paying the interest for several years, misappropriated the money and became a defaulter. The plaintiff, being unable to get the money from him or his successor in office, brought this action to recover the same from the county.

The right to recover in this action cannot be based upon the

theory that the county became a debtor for this money the moment it was paid to its treasurer. He did not receive it as the agent of the county, or in any way for it, or on its behalf. It did not, by deposit with the treasurer, become the money of the county, and the county could not, through its board of supervisors, in any way control or interfere with it. The treasurer was the custodian of the money, selected not by the county, but by the law.

Before the Constitution of 1846, moneys such as this were paid to the registers or clerks in chancery, who were required to give bonds for the faithful performance of their duties. (2 R. S. 170, 172.) By the Judiciary Act of 1847 (Chap. 280, § 71) the clerk of the Court of Appeals was substituted in the place of the registers and clerks, as the custodian of such moneys ; and by chapter 277 of the Laws of 1848, the county treasurers were substituted in the place of the clerk of the Court of Appeals. Section 6 of this act provides, that every county treasurer shall, at each annual session of the board of supervisors of the county in which he resides, report a statement of all the bonds and mortgages, and other securities and moneys received and held by him under the provisions of the act, stating the amount of such securities respectively, and the persons interested therein ; that the board of supervisors may require such treasurer to increase the amount of his bond, and that it should be the duty of the board of supervisors to examine into the situation of the securities and moneys in the hands of the treasurer, and to ascertain whether such moneys are safely kept, deposited, or invested, and such securities are adequate and safe ; and these are the only functions which the board of supervisors have to discharge in reference to such moneys, and the only relation they have thereto. (See, also, chap. 386 of the Laws of 1859.) During all the successive changes simply different public officers were selected as the custodians of such moneys, and provisions were made that ample security should be given by such officers for such moneys. The action and supervision of the supervisors are enjoined only as further security for the moneys which remain under the abso-

lute control of the officers selected, subject to the direction of the courts.

It is specially provided (1 R. S. 419, § 6) that all losses which may be sustained by the default of the treasurer of any county in the discharge of his duties in reference to money received by him from taxation shall be chargeable to the county; but there is no provision of law imposing upon the county liability for other moneys received by the county treasurer.

There is no liability of the county on the theory that the money was received into the county treasury. Properly speaking, there is no such treasury. Here there was no law which required the treasurer to keep the money of the county in any particular place. He could keep the money in any place which he might select. He could deposit it in any bank, in his individual name simply, or in his name as county treasurer. However he deposited it, it remained under his absolute control, and subject to a draft by him for any purpose. Here he generally deposited all the moneys which came to him officially in his name as county treasurer. But in the same account he deposited his private moneys and he made drafts on the account for private as well as official purposes.

There is but one other ground of liability of the county in this case which can be supposed; and that is that the plaintiff's money was in some way used and applied by the treasurer for the benefit of the county, and hence that the county ought equitably to respond for it. The facts bearing upon this ground, as found by the referee, are as follows: The county treasurer received plaintiff's money in 1870, and invested $750 of the same in two mortgages — one for $400, and another for $350. On the 20th day of July, 1875, he sold the mortgage for $400, and received the principal sum, and on the 22d day of July, 1875, he deposited that money to his credit, as county treasurer, in the First National Bank of Ithaca. On the 31st day of July, 1875, the other mortgage was paid, and he deposited the money to his credit, as county treasurer, in the Tompkins County National Bank. In these two banks he deposited indiscriminately and undistinguishably all classes of

funds that came to his hands by virtue of his office, including taxes, funds paid by the State, surplus moneys received from sales made by orders of the courts, moneys of infants or other persons, paid to the county treasurer by like orders, and moneys which came to him from his own resources; and he drew drafts against the funds thus deposited, for all purposes for which it became his official duty to make payments, and occasionally for his private or individual purposes.

At the times of the deposits of the two sums above mentioned, the county treasurer was a defaulter to the amount of $5,000 and upwards on account of funds of the county and of funds held by him, under orders of the courts, misappropriated by him or converted to his own use. At the time of the deposit of the $400 on the 22d day of July, there was to his credit in the bank $4.05, and on the 27th day of the same month he made a further deposit of $78; and the amount of the three sums thus to his credit was checked out as follows: July 24, a check for $19.02 to a special guardian of an infant for money which had been paid to him as county treasurer by order of the court; a check for $400 for surplus money which had been paid to him by the order of the court, and which he had previously misappropriated, and two checks for the balance for his personal use. It is thus clear that none of the $400, deposited July 22, was paid to or for the use of the county.

On the 31st day of July, 1875, when he deposited the $354.38, received on the other mortgage, in the Tompkins County National Bank, his account at that bank was overdrawn $97.32, and before making any further deposits he gave checks on that account for the benefit of the county for $131. On the 3d day of August, 1875, he made a deposit of $3,440.53 of his private funds, and on the same day he drew a check on that bank for $2,015.63, of which $515.63 was in payment of a claim against the county, and $1,500 was in payment of his own note, held by the bank, the proceeds of which had passed to his credit in that bank, as treasurer. Thereafter he made further deposits, and he gave checks on the bank for claims against the county, for funds which had been deposited with

him by orders of the court some of which he had misappropriated, and for his private purposes.

From these facts it is impossible to determine how much, if any, the county was benefited by the misappropriation of the plaintiff's moneys. They were deposited in accounts in which were also entered credits for moneys of the county, moneys of infants and others, and his private moneys, and upon which checks were drawn for claims against the county, against him personally, and for moneys of other persons, which had been previously misappropriated by him. When he made the large deposit of his own moneys, on the 3d day of August, it might well be said that he had replaced the moneys of the plaintiff, which he had previously misappropriated to the amount of $354.38, and how could it be demonstrated that that money was again drawn out for the benefit of the county? As the referee found for the plaintiff for the whole amount of his money deposited with the treasurer, it is sufficient to uphold the reversal of the judgment, even upon the theory of the complaint, that the proof fails to show that the county had the benefit of the whole of it.

If the proof did not justify a recovery by the plaintiff for the whole sum found by the referee, then the General Term could properly reverse the judgment, and its order, under the stipulation, must be affirmed here, even if the evidence would have justified a recovery for $131, or any other sum less than the whole. (*Godfrey* v. *Moser*, 66 N. Y. 250, 254.)

We do not determine the question whether the plaintiff could have recovered by proof that the county treasurer had applied his money for the use or benefit of the county. If the plaintiff had taken the new trial and obtained a recovery for such sum as competent proof showed had been thus applied, the question would have been presented for consideration.

The order should be affirmed and judgment absolute ordered against the plaintiff, with costs.

All concur, except RUGER, Ch. J., and FINCH, J., not voting.

Order affirmed and judgment accordingly.