[Civ. No. 4621.   Second Appellate District, Division One.—January 28, 1925.]

## GARNET W. COEN, Respondent v. THE CITY OF LOS ANGELES (a Municipal Corporation), Appellant.

[1] MUNICIPAL CORPORATIONS — LOS ANGELES — SUIT FOR MONEY OR DAMAGES—PRESENTATION OF CLAIM.—In view of the provision of the charter of the City of Los Angeles that "no suit shall be brought on any claim for money or damages against the City of Los Angeles . . . or any officer or board or commission of the city until a demand for the same has been presented as herein provided, and rejected in whole or in part," the presentation of a demand in the manner required by the charter is a necessary prerequisite to the maintenance of a suit against that city for the recovery of "money or damages."

[2] ID.—EVIDENCE — CHARTER—JUDICIAL NOTICE.—The contents of a city charter like that of the City of Los Angeles require no proof, but are the subject of judicial cognizance.

[3] ID. — EVICTION — TENANT IN POSSESSION — VARIANCE. — A claim against the City of Los Angeles presented upon the theory that claimant is a tenant in possession of certain tide-lands to be taken by said city, and that he desires a settlement of his claim in view not only of the damages which had been suffered by him by what the city had done with reference to filling in and improving the surrounding and adjoining lands, but also on account of what he understands that the city might do when its officers should make up their minds and determine what they are going to do in the way of making further improvements, will not support a subsequent action against said city for damages based upon an eviction.

[4] ID. — CONSTRUCTIVE EVICTION — SURRENDER OF POSSESSION.—Any disturbance of the tenant's possession by the landlord whereby

---

1.  See 18 Cal. Jur. 1109.

4.  What amounts to eviction, note, 17 **Am. Rep.** 42.

Constructive eviction resulting from positive overt act of landlord, notes, 7 Ann. Cas. 593; 19 Ann. Cas. 690.   See, also, 16 **R. C. L.** 686; 15 **Cal. Jur.** 680.

the premises are rendered unfit or unsuitable for occupancy in whole or in substantial part for the purposes for which they were leased amounts to a constructive eviction, if the tenant so elects and surrenders his possession; but there can be no constructive eviction if the tenant continues in the possession of the whole, however much he may be disturbed in the beneficial enjoyment.

[5] ID.—CLAIM—COMPLAINT — VARIANCE—SUBSTANTIAL IDENTITY.—It is not every variation from strict identity in the amount of the demand, as shown in the statement of claim as compared with the subsequent complaint, that will deprive a plaintiff of the right to maintain an action against a city having charter provisions such as those contained in the Los Angeles charter with reference to the necessity for presentation and rejection of a demand as a condition precedent to bringing action, as such a charter provision will be deemed to have been met by the plaintiff in so far as the claim sued upon is substantially the claim first presented to the city.

[6] ID.—TRESPASS — DAMAGES—FINDINGS.—In an action for damages for trespass upon real property, a finding that "the value of the improvements left on the property leased at the time of the commission of the acts complained of" is a specified sum, "after deducting the depreciation shown by the evidence," does not establish the amount of damage to those improvements caused by such acts.

---

(1) 28 Cyc., p. 1757, n. 83.    (2) 24 C. J., p. 91, n. 47.    (3) 36 C. J., p. 263, n. 60.    (4) 36 C. J., p. 261, n. 46.    (5) 28 Cyc., p. 1757, n. 83.    (6) 38 Cyc., p. 1156, n. 25.

APPEAL from a judgment of the Superior Court of Los Angeles County.    George H. Cabaniss, Judge Presiding. Reversed.

The facts are stated in the opinion of the court.

Jess E. Stephens, City Attorney, Clyde M. Leach, Assistant City Attorney, and Kenneth A. Carey, Deputy City Attorney, for Appellant.

D. H. Nelson and J. M. Chatterson, for Respondent.

CONREY, P. J.—This is an action brought against the City of Los Angeles by a sublessee of certain tide-lands owned by the City at Los Angeles harbor. In the case of *People* v. *Banning Co.*, 166 Cal. 635 [138 Pac. 101], in-

volving these same and other tide-lands, it was determined that the title was vested in the Banning Company, subject to the right of the public to use the land for purposes in aid of or in connection with navigation or fishery when at any time they might be so required. On the twenty-fourth day of July, 1917, the City of Los Angeles and the Banning Company and Hancock Banning entered into an agreement, which provided for the conveyance in fee by the Banning Company to the city of all its title to the lands in question. These tide and submerged lands are known as Mormon Island, and are a portion of Tideland Location 152. In return therefor the city gave to the company a thirty-year lease to all of the land lying behind a line 204 feet shoreward from and parallel to the pierhead line. The leased land was called Parcel No. 1. The 204-foot strip along the waterfront was divided into several parcels, but the only portion of it involved in this action is Parcel No. 5. The 1917 agreement shows that the purpose and effect of the agreement and conveyance was that until the 204-foot strip should be required by the city for public waterfront improvements, the Banning Company and Hancock Banning were given permits to use the same under the restrictions and limitations contained in the agreement. Subsequently these lands were subdivided into lots and roadways by the Banning Company and Hancock Banning, and said lots and roadways were transferred to the various successors in interest of the Banning Company and Hancock Banning. Thereafter, J. B. Banning, one of the successors in interest of the Banning Company and Hancock Banning in and to lot 8 of the above-mentioned subdivision, leased a portion of said lot 8 to respondent's assignors. Respondent's lease by its terms was expressly made subject to all conditions and restrictions of the 1917 agreement. One of these restrictions and conditions provided that the use of all or any part of the lands lying within a line parallel to and distant 204 feet from the United States pierhead line was subject to revocation and cancellation by the City of Los Angeles at any time, upon certain terms as to notice and compensation which are hereinafter stated.

Early in 1922 the board of harbor commissioners of the city determined to improve a considerable portion of the

frontage on Mormon Island peninsula with public wharves, but it was found that more land would be required than the 204-foot strip which it had a right to take under the 1917 agreement. Accordingly, negotiations with the Banning interests resulted in a release to the city of a considerably greater area than the 204-foot strip, and as a result an agreement known as the Katherine S. Banning agreement, dated September 29, 1922, released to the city, in addition to other lands, all of the lands included in respondent's lease; subject, of course, to whatever rights the sublessee had therein.

On or about July 27, 1922, prior to the construction of the wharves, transit sheds, and rail facilities agreed upon, at and in the vicinity of respondent's leasehold, and upon certain other lands released by and in pursuance of an agreement of June 30, 1922, between the city and Hancock Banning, the city commenced the work of improvement by raising the grade of these lands to the necessary level by pumping upon them the soil dredged from adjacent harbor channels. In order to prevent the dredgings from flowing upon and doing any damage to the improvements (an electric smelter) upon respondent's leasehold, the city built a dirt embankment immediately outside of and around respondent's leasehold, the effect of which was to prevent vehicular access by land to the leasehold until the fill had sufficiently dried out—a matter of several months. Since March, 1921, and up to the commencement of and during the dredging and filling, respondent's smelting plant had not been in operation and had been completely closed down.

Respondent commenced this action on the twentieth day of November, 1922. Thereafter, on the twenty-third day of November, 1922, appellant caused to be served upon respondent a six months' notice of cancellation and revocation of that portion of respondent's leasehold lying within the 204-foot strip; said six months' notice to expire June 1, 1923.

During January, 1923, in pursuance of the provisions of the 1917 agreement and the said agreements of June 30 and September 29, 1922, and of the general uses for which the city held title to the lands in question, the work of development and waterfront improvement was further prosecuted. In connection therewith a railroad was built by

the city along the area laid out as a way or street within the above-mentioned subdivision, which street passed by the westerly end of respondent's leasehold.

Respondent's complaint alleged an entry by appellant and the ejectment of respondent, and an unlawful withholding of possession, and during such withholding the commission of waste upon the premises by causing certain dredgings to be thrown around and upon said property, and by the building of an embankment around respondent's leasehold, and by dredging and filling the surrounding lands, and that thereby respondent suffered total loss of the improvements upon the premises. By his complaint respondent prayed for possession and damages and for general relief. By supplemental complaint filed on the third day of March, 1923, the respondent alleged further trespass and eviction of respondent, and further breach of "the covenant of quiet enjoyment of the lease to plaintiff," by the building of a railroad on adjacent land, and prayed for an injunction against the further building of the railroad, and mandatory relief for its removal and the restitution of the premises to the same status existing at the time of the filing of the complaint. In the proceedings had upon the application for injunction, the relief prayed for by respondent was denied, but appellant was ordered to construct a roadway across the railroad and other lands to enable respondent to go to and from his leasehold.

Appellant's amended answer to the complaint and supplemental complaint contains matter of denial, and further sets forth the acts done by and rights claimed by appellant in the improvement of lands adjacent to and surrounding respondent's leasehold.

At the trial it was stipulated that the plaintiff at the time of the institution of this action was entitled to the peaceable possession of the lands and premises described in the complaint, as assignee of a lawfully executed lease granted by J. B. Banning (one of the successors in interest of the Banning Company and Hancock Banning), to E. Riveroll, on September 1, 1919, for a period of five years, in accordance with the authority contained in and subject to the conditions of the said agreement of July 24, 1917, and that, subject to said conditions, said lease to Riveroll was renewable at the option of the lessee for a

further period to expire July 23, 1947. It was further stipulated that the leasehold described in the complaint was improved by plaintiff and his immediate assignor and associates for a steel plant, being occupied by buildings and furnaces, which are on the leasehold but which have not been operated since about the month of March, 1921; that the only permit or authority of record obtained from the board of harbor commissioners of the city for the construction of said buildings, furnaces, and other structures and improvements placed upon said leasehold is the approval by said board on August 27, 1919, of an application submitted by A. E. Davidson for a permit to construct a foundry building on Mormon Island peninsula, the building permit describing a structure approximately 42x84 feet, at an estimated cost of $5,000. It was further stipulated that in the latter part of the month of July, 1922, or thereabouts, the city began filling in the land surrounding plaintiff's leasehold with material dredged adjacent to and abutting the harbor of the plaintiff, and caused an embankment to be thrown up outside of and near the fence surrounding the said improvements upon plaintiff's leasehold, which embankment was for the purpose of preventing the dredgings from running over and upon the leasehold; and continued so dredging and filling until the adjacent land had been raised (the height of the embankment being by the stipulation left for determination by the evidence); that plaintiff's leasehold prior to the throwing up of said embankment and said filling was practically on the level of the surface of all of the surrounding adjacent lands.

The 1917 agreement, to the conditions of which respondent's lease is by its terms made subject, identified the lands covered thereby as lands shown upon an attached map numbered 4392, which lands were declared to be a portion of Tideland Location 152, all situate in the county of Los Angeles. The 1917 agreement referred particularly to Parcel No. 5, as designated on said map 4392, and provided that certain described frontage to a depth of 204 feet from the United States pierhead line around said Parcel No. 5, "shall be and is hereby reserved to the city to be improved with public wharves, transit sheds, roadways, railroads and other public improvements in aid of commerce, navigation and fisheries, as necessity may require, for the accommo-

dation of the public, including the Banning Company and its sublessees and licensees.'' The Parcel No. 5 is the same land mentioned in said lease as the 204-foot strip, and approximately one-half of respondent's leasehold lies within said Parcel No. 5.

The 1917 agreement further provided ''that until all or any portion of said Parcel No. 5 is required or improved by the city for public purposes, during the continuation of the lease herein, the said Hancock Banning is hereby granted by the city a prior and preferential permit to use said Parcel No. 5 for any and all lawful private purposes, under the same terms and conditions above set out with reference to Parcels Nos. 3 and 4.''

The said terms and conditions relative to Parcels Nos. 3 and 4 included the following: ''Provided, however, that the city may at any time revoke said permits, or either thereof, as to any and all of said space covered by Parcels Nos. 3 and 4 upon which public wharves, warehouses, streets, approaches, railways or other public uses for navigation, commerce and fishery, as hereinafter defined in paragraph 8 of this agreement, may be required by the city; but prior to the termination of such permits upon any portion of said space, six months' notice must be given by said Board of Harbor Commissioners to the Banning Company, describing the space so required for such uses, and upon the expiration of said notice, possession of the premises described in the notice shall at once be delivered by the Banning Company, or its successors, to the city.''

''That upon any such termination the city shall, within sixty days after the determination of such value, pay to the Banning Company the reasonable value of any and all wharves or other structures or improvements left upon the premises affected by such revocation, which have been constructed in accordance with the requirements of, and with the approval of the Board of Harbor Commissioners. . . .

''That upon such termination of said permit, as herein provided, the Banning Company shall not be entitled to any payment, nor shall any allowance be made for the value of said permit or for the unexpired term thereof, nor for any value derived from the permit, nor on account of good will, going concern, earning power, increased cost of reproduction, or increased value of any property owned or operated

by the Banning Company under said permit, or in connection therewith. . . .

"That the right of the city, upon any such revocation, to immediate possession and use of any of the said space so canceled shall not be postponed because for any reason said arbitrators, have not made their award, or payment has not been made within the prescribed time for any such improvements so left upon any space so canceled. . . . "

Appellant contends that the acts done by it did not amount to an eviction; also that the amount of damages awarded is not justified by the evidence, either as the result of an eviction or other dispossession or for loss sustained by respondent by reason of any interference with his leasehold in the nature of a trespass thereon. Appellant further contends that respondent is without right to maintain this action, because respondent failed to present to appellant or its board of harbor commissioners a claim and demand for money or damages, which presentation, according to the provisions of the charter of the City of Los Angeles, is a condition precedent to the right to maintain an action for the recovery of such money or damages.

The first cause of action (stated in the first count of the complaint) was "discontinued," on motion of the plaintiff. The judgment rests upon the second cause of action as stated in the plaintiff's complaint and amendments thereto and his supplemental complaint and amendments thereto. The court found that all of the allegations contained therein are true, "except as to the amount of damages, which is true in part." In the second count of the complaint it is alleged that on or about September 8, 1922, the defendant entered upon and ousted and ejected the plaintiff from the described property, and thereafter continued to withhold possession thereof from the plaintiff; that during the time of said unlawful withholding of said property, the defendants committed waste thereon by means of the acts described in the complaint as hereinbefore stated; that by reason of said acts, sundry described improvements of the plaintiff which had cost him more than $37,000 were a total loss to the plaintiff; that plaintiff's right to possession of said premises "and approaches" was at the time of defendant's entry of the value of $100,000, all of which was rendered valueless by the said acts of the defendants; "that

the plaintiff has heretofore submitted his claim of damage herein alleged in writing to the defendants for acceptance or rejection, and the same has been by it and them rejected.'' Plaintiff prayed judgment (besides the demand based upon the first count of the complaint) for possession of the described premises; for damages in the sum of $137,000 for waste committed and loss sustained by loss of plaintiff's property and possessory rights; for costs, etc. The defendant, among other issues raised by the answer, denied that the plaintiff at any time had submitted his claim of damage or any claim of damage to the defendants for acceptance or rejection or at all. Plaintiff's first and only reference (in his pleadings) to his lease is in the supplemental complaint. The facts concerning plaintiff's leasehold were brought into the record by the defendant's amended answer to complaint and supplemental complaint.

In addition to the general finding above mentioned the court found that on September 29, 1922, the lease in which the Bannings were lessors was transferred to the city and that thereafter the plaintiff paid the rentals named in said lease, to wit, $100 per month, to the City of Los Angeles to and including May, 1923; that after July 24, 1922, the defendant city under its contract of that date with the Bannings proceeded to fill in the lands surrounding the plaintiff's leasehold and continued in that work until January, 1923, at which date the city began to build a steam railroad over a certain right of way adjoining plaintiff's leasehold and thereby obstruct plaintiff's ingress to and egress from the leased premises; that the plaintiff had placed on said premises sundry improvements, the values of which are stated in the findings; ''that the defendant continued in the occupation of, and the said improvement of, the surrounding lands and the right of way along plaintiff's said leasehold without regard for the rights of the plaintiff, and continued to disturb the peaceable possession of the plaintiff, and to obstruct his ingress and egress to said property from the said 29th day of September, 1922, continuously down to the time of trial''; that prior to the commencement of this action, the plaintiff had presented his verified petition, claim, and demand for damages to the defendant, which claim and demand was by the defendant rejected. The court further found ''that the plaintiff's lease was executed on the 1st

day of September, 1919, for a period of five (5) years, with an extension clause for a further term to July 23, 1947, and the court finds that the value of said lease was at the time of the acts complained of, and ever since has been and now is, the sum of sixty thousand ($60,000.00) dollars, this after deducting the rentals and charges reserved therein."

Plaintiff's theory of his action, as stated by his counsel at the beginning of the trial, was as follows: "We will contend in this action there has been an eviction of the tenant, and that the property, so far as it was leased to the lessee, he has been evicted from it, and that the damages are the entire value of the leasehold and the expenses that he has been put to in preparing that land for the special occupation that it was leased for, and these will be the issues that the evidence will be directed to." The court in its decision followed this theory, and determined that the acts complained of and found to have been done were unlawfully and oppressively done by the defendant without regard for the legal rights of the plaintiff, "and constituted a disturbance of the quiet enjoyment and possession of said leasehold and amounted to an eviction of the plaintiff from the whole thereof." The court further determined that the damages to which the plaintiff is entitled "is the value of said leasehold as found, to wit, the sum of $60,000"; and that the plaintiff should be awarded the further sum of $1,000 as a recovery of rents paid by him after such eviction; and that the claim of the plaintiff for improvements and preparing the premises of the leasehold for the manufacture of steel, for which the same was leased, cannot be allowed. Judgment accordingly was entered in favor of plaintiff in the sum of $61,000 and costs. No other relief was granted by the judgment.

The defendant appeals from the judgment. The plaintiff also appealed "from that part, only, of said judgment which does not award to the said plaintiff as a part of his damages" the value of his improvements, and the amount of a reasonable attorney fee to the plaintiff, and exemplary damages, to which plaintiff claims that he is entitled under the findings of the court.

[1] The charter of the City of Los Angeles requires that claims and demands against the city (with exceptions not important here) shall be paid only on demands presented

to the appropriate officers of the city and that (sec. 22g) "no suit shall be brought on any claim for money or damages against the city of Los Angeles . . . or any officer or board or commission of the city until a demand for the same has been presented as herein provided, and rejected in whole or in part. . . . " The presentation of a demand in the manner required by the charter is a necessary prerequisite to the maintenance of a suit against the city for the recovery of "money or damages." (*Farmers' etc. Bank* v. *City of Los Angeles*, 151 Cal. 655 [91 Pac. 795]; *Spencer* v. *City of Los Angeles*, 180 Cal. 103, 119 [179 Pac. 163].) The cause of action, according to these decisions, does not accrue until such presentation takes place.

The only attempt by the plaintiff to prove compliance with these requirements of the charter was made by offering in evidence a document filed by plaintiff with the board of harbor commissioners on or about the seventeenth day of September, 1922. Counsel for defendant, being called upon to stipulate the facts concerning this claim, admitted that the document offered was a carbon copy of the claim filed by plaintiff with said defendant, and that the claim that was filed was rejected, "but whether that claim is a part of the facts for a foundation for this action, we will not stipulate." This then occurred between the court and counsel: "The Court: You make the formal objection? Mr. Carey: Yes. The Court: Well, I will overrule it without knowing whether I am doing so advisedly. You understand I want all of these documents in, so at this time, purely in a formal way, I will overrule the objection." We quote this part of the record in reply to the contention of counsel for respondent that appellant did not make this defense while the case was on trial in the court below, and did not support such defense "by the provisions of its city charter and other necessary evidence which appellant has always had available." [2] The contents of a city charter like that of the City of Los Angeles require no proof. They are the subject of judicial cognizance. (*Spaulding* v. *Desmond*, 188 Cal. 783, 789 [207 Pac. 896].)

It is therefore necessary to examine the document which was received in evidence in the manner above stated, and consider whether or not it constituted a claim presented in

manner and form sufficient to comply with said require-
ments of the city charter.

The document in question was addressed to the city and
the appropriate officers thereof and was entitled "Petition
and Claim for Damages for Confiscation of Property at
Harbor." It then refers to the several agreements, con-
veyances, and leases leading to and including the Riveroll
lease which had become the property of the claimant Coen.
It then sets out the expenditure by the claimant Coen of
the sum of $100,000 for the purpose of preparing iron ore
for the market, which iron ore the claimant had expected
and intended to bring from certain mining properties in
Mexico, for crushing and smelting on said leased premises,
and states that a part of said expenditure was made for the
purpose of building concrete furnaces and other improve-
ments on said leased premises, and that for said improve-
ments the claimant expended in actual money the sum of
$35,714.61; and that said improvements would be a total
loss in the event that they should be torn down and dis-
mantled.

The claimant then stated on his information and belief
that the city intended to take for its own use certain lands,
including said land leased to the claimant; "that for such
purpose the said city of Los Angeles has already thrown
a five-foot embankment entirely surrounding the property
leased by your petitioner and claimant thereby barring
egress and ingress to your petitioner; that your peti-
tioner sold the ore now on the said premises but when his
buyer called with trucks to take the same away he found
it impossible to enter the said premises by reason of said
embankment and your petitioner has lost the said sale; that
your petitioner and claimant is informed and believes and
therefore alleges, that the city of Los Angeles can only take
for its own use approximately two hundred and four (204)
feet from the water front on said property, but that the city
is undecided whether it will take all of the property or only
sixty (60) feet in addition to the said two hundred and
four feet; that as to the said two hundred and four (204)
feet, approximately, the city may take for its own use, it
must, before so taking it, give the tenants thereon six months'
notice thereof and in addition thereto pay to the tenants the
amount of the cost of their improvements."

Said statement of claim purports to contain four claims. In the first claim, after making the statements to which we have referred, the claimant made certain further statements with regard to his activities in relation to his lease and the business which he was endeavoring to establish thereon, and then made his demand conditionally as follows: "That if the plan of the city of Los Angeles is to take all of the said property of your petitioner and claimant and desires to give to your petitioner and claimant another piece of water front property with a lease for thirty (30) years, that in that event your petitioner and claimant will be damaged to the extent of an actual expenditure of $35,714.61."

The "second claim," after adopting the statement of facts contained in the first claim, makes its alternative statement as follows: "That if the plan of the city of Los Angeles is to take for its use only sixty (60) feet beyond the said two hundred and four (204) feet from the water front, and allows your petitioner and claimant to keep the balance of said property under the said lease for the balance of said term of thirty (30) years, and which your petitioner is willing to accept, that then and in that event your petitioner is damaged to the extent of $35,714.61 and in addition thereto the sum of ten thousand ($10,000.00) for the loss of said sixty (60) foot strip, making a total of $45,714.61 therefor."

The "third claim," after adopting the statement of facts contained in the first claim, makes its demand as follows: "That if the plan of the city of Los Angeles is to take for its use all of the said property and not permit your petitioner and claimant to have another piece of water front property nor any portion of said property without cost at all, then and in that event your petitioner and claimant claims damages to the extent of $35,714.61 for money actually spent in buildings, furnaces and improvements as aforesaid and $62,285.91 for the confiscation of the balance of the property, which the city of Los Angeles is not permitted to take beyond said approximately two hundred and four feet from the water front, said sum of $100,000.00 being the actual cost to your petitioner and claimant."

The "fourth claim" adopts the statement of facts contained in the first division; states that the claimant is further damaged to the extent of ten per cent of the amount of damages allowed him by the city for his attorney fees in-

curred by bringing this petition and claim in addition to the actual damages which the city will allow him.

Based upon the foregoing four statements of claim, the document in question closed with an alternative demand of payment as follows: "1.—For the leasing for the balance of a thirty (30) year period under the present lease, without cost or expense, of a suitable parcel of water front property, and the payment to petitioner and claimant of the sum of $35,714.61 under the first claim herein...... *or*—2.—For the leasing for the balance of a thirty (30) year period under the present lease, without cost or expense, of that portion of the present property beyond 264 feet from the water front which the city of Los Angeles will not take for its use, and the payment to petitioner and claimant of the sum of $45,-714.61 under the second claim herein...... *or*—3.—For the sum of $100,000.00 under the third claim herein...... *and* 4.—For ten per cent of the amount of damages awarded him by the city of Los Angeles in addition to said damages, to compensate him for attorneys fees incurred by this petition ...... *and* 5.—For such other and further cost, expense, disbursement and damage herein incurred by him."

[3] It at once becomes clear that the claim presented by respondent prior to the commencement of the action was not based upon an eviction.    It shows throughout that it was being presented by a tenant in possession.    It contains the direct statement by the claimant that the lease had been assigned to him and that "he is now and ever since said assignment . . . has been the sole owner and holder of said lease." The entire theory of his claim was that he was then in possession as tenant, and that he desired a settlement of his claim in view not only of the damages which had been suffered by him by reason of what the city had done, but also on account of what he understood that the city might do when its officers should make up their minds and determine what they were going to do.    [4]    In view of the fact that the only theory of eviction relied upon by respondent is that of constructive eviction, the law governing the rights of a tenant after such eviction becomes applicable.    "The general rule, however, relating to a constructive eviction is that any disturbance of the tenant's possession by the landlord whereby the premises are rendered unfit or unsuitable for occupancy in whole or in substantial part for the purposes

for which they were leased amounts to a constructive eviction, if the tenant so elects and surrenders his possession (16 R. C. L., p. 686). There can be no constructive eviction if the tenant continues in the possession of the whole, however much he may be disturbed in the beneficial enjoyment.'' (*Veysey* v. *Moriyama*, 184 Cal. 802, 805 [20 A. L. R. 1363, 195 Pac. 662, 663].)

And further, in view of the provisions of the city charter to which we have referred, we are of the opinion that respondent is not entitled to maintain this action for any money claim or demand not contained in the statement of his claim which he made to the city. [5] We concede that it is not every variation from strict identity in the amount of the demand, as shown in the statement of claim as compared with the subsequent complaint, that will deprive a plaintiff of the right to maintain his action. In so far as a claim sued upon is substantially the claim first presented to the city, the charter requirement should be deemed to have been met by the plaintiff. Construed under this rule, it may be that the claim, thus presented, established a sufficient foundation on which damages might have been recovered as for a trespass on the leasehold property; but the amount of the judgment which could be awarded in such action would necessarily be limited to the acts which had been done by the city at the time when the claim was presented, and the damages resulting therefrom, or arising out of the continued operation thereof.

The fact that the plaintiff had not been ousted from the leased premises, and did not claim an eviction even during the pendency of this action, until the time of the trial, is further shown by his supplemental complaint, under which he sought an injunction to compel the removal of alleged obstructions ''around plaintiff's property,'' which interfered with his facilities for ingress into said property and egress therefrom. And as we have seen, the court actually ordered the construction by defendant of a roadway to enable the plaintiff to go to and from those premises.

As the judgment did not award possession to the plaintiff, it is clear that the plaintiff was not awarded any relief on the theory of an action in ejectment. The judgment was planted squarely upon the proposition that the plaintiff had been evicted by his landlord, the defendant, and that

therefore he was entitled to recover the value of the leasehold as damages for such eviction.   We have stated the sufficient reasons which effectually show that a cause of action for such damages cannot be maintained herein.

[6]   Finally, if it were contended that the findings establish facts constituting trespass, and state the amount of damages incurred thereby, the answer must be that the court below plainly did not intend to segregate and assess damages as for a trespass.   The fact found, that ''the value of the improvements left on the property leased at the time of the commission of the acts complained of, is found to be the sum of $25,000.00, after deducting the depreciation shown by the evidence,'' does not establish the amount of damage to those improvements caused by those acts.

For the reasons above stated, the judgment is reversed.

Houser, J., and Curtis, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on March 26, 1925.

All the Justices concurred.