[Civ. No. 8848. Second Appellate District, Division Two.—December 5, 1934.]

UNION BANK & TRUST COMPANY OF LOS ANGELES (a Corporation), as Executor, etc., Appellant, v. COUNTY OF LOS ANGELES (a Municipal Corporation), Respondent.

602

O. A. Ehlers and Loeb, Walker & Loeb for Appellant.

Everett W. Mattoon, County Counsel, and S. V. O. Prichard, Deputy County Counsel, for Respondent.

WILLIS, J., *pro tem.*—From a judgment entered in favor of defendant County of Los Angeles, after an order sustaining a general demurrer to each of two causes of action in the complaint without leave to amend, plaintiff appealed.

The complaint contained four separately stated causes of action, the second and third not being involved in this appeal and no further reference will therefore be made to them. The first cause alleges the corporate character of plaintiff, appellant herein, and its representative capacity as executor of the estate of Charles H. Crawford, deceased, who died on or about May 20, 1931; that defendant County of Los Angeles, respondent herein, was and is a municipal corporation and body politic; that L. E. Lampton during all the times mentioned was and is the county clerk of said county and that Liberty Hill was during all of said times the chief deputy county clerk to and including July 1, 1932; that by virtue of their respective offices they were clerk and chief deputy clerk, respectively, of the Superior Court in and for Los Angeles County, charged with the duty of keeping and preserving all documents, money and other property introduced in evidence as exhibits in actions brought and tried in said court; that on or about March 13, 1930, said Charles H. Crawford delivered to and bailed with said Lampton and Hill $75,000 in lawful money of the United States, for the purpose of introducing the same in evidence as an exhibit

in a certain criminal action then pending in said court; that said Lampton and said Hill accepted said money for said purposes and undertook to keep, care for and preserve the same, and to return it to said Crawford upon demand after conclusion of the trial of said action; that said trial was completed on or about July 11, 1930, judgment therein being affirmed on appeal on or about July 30, 1931; that thereafter said Crawford demanded of defendants that said $75,000 be returned to him, but that defendants have failed and neglected and still fail and neglect to return said sum or any part thereof to said Crawford or to plaintiff; that on or about August 31, 1932, plaintiff presented to the board of supervisors of said county its written claim and demand for payment of said sum of money, a copy of which claim is attached to and made a part of the complaint; that on or about September 19, 1932, said board rejected said claim. The claim referred to and incorporated in the complaint recites that about March 13, 1930, Charles Crawford delivered to the district attorney of Los Angeles County the sum of $75,000, lawful money of the United States, for the purpose of using the same as an exhibit in a criminal action then pending in the Superior Court in and for Los Angeles County; that said money was placed in evidence at the trial of said case and placed in the custody and safekeeping of L. E. Lampton, county clerk, and Liberty Hill, chief deputy county clerk of said county, to be by them safely kept and returned to said Crawford upon the conclusion of the trial; that said trial was concluded and judgment therein became final on July 31, 1931, but that return of said money to Crawford was prevented by a temporary injunction; that within one year prior to making this claim said claimant had demanded return of said money, but that the return thereof has been and still is refused; that claimant is informed that said money was converted to the use and benefit of and embezzled by said Liberty Hill.

The fourth cause of action alleges the corporate capacity of plaintiff, the governmental capacity of defendant County of Los Angeles, the death of said Charles H. Crawford and the representative capacity of plaintiff as his executor; that L. E. Lampton has been during all times therein mentioned and still is county clerk of said county and that Liberty Hill was during all said times up to about July 1, 1932, chief

deputy county clerk; that about August 31, 1932, plaintiff presented to the board of supervisors a claim for $75,000, a copy of which is attached to and made a part of this cause of action, and which is hereinbefore recited in substance; that said claim was rejected on September 19, 1932. Then follows this additional allegation: ''Within two years last past defendants county of Los Angeles, L. E. Lampton and Liberty Hill, and each of them, became indebted to plaintiff's intestate in the sum of $75,000.00 for money had and received to the use and benefit of plaintiff's intestate. No part of said sum has been repaid though demand therefor has been made, and the whole thereof is now due, owing and unpaid.''

Appellant propounds three questions in its brief, as follows: (1) Where money belonging to ''A'' is introduced in evidence as an exhibit in a criminal action pending in the superior court against ''B'' (to which action ''A'' is in nowise a party), and thereby placed by the court in the custody of the county clerk for safekeeping, is the county obligated to return such money upon the conclusion of the criminal action? (2) May a county be liable for money had and received? (3) Is a common count for money had and received subject to general demurrer?

An orderly and logical disposition of these questions requires that the procedural law questions be determined before we approach the question of liability.

The answer to question number 2 must be affirmative. An action for money had and received will lie against a county in a proper case after presentation and rejection of a claim therefor. For the basis of such a cause of action is that the defendant county has received money which belongs to plaintiff and which in equity and good conscience it ought to pay to plaintiff. In such a case equity interposes and supplies the implied promise to repay, thereby creating an implied contract which is within the scope of obligations or liabilities upon which counties may be sued under the procedure presented by statute. (Sec. 4075, Pol. Code; *Price* v. *County of Sacramento*, 6 Cal. 255; *Colusa County* v. *Glenn County*, 117 Cal. 434 [49 Pac. 457]; *County of Tulare* v. *County of Kern*, 132 Cal. App. 462 [22 Pac. (2d) 750].) To the same effect is the case of *Trower* v. *City and County of San Francisco*, 157 Cal. 762 [109 Pac. 617],

cited by appellant, but therein it was also held that presentation of a claim in that case as a prerequisite to suit was not required by the organic act governing the city and county of San Francisco as it then existed. This question and answer deals only with the substantive aspect of the right of action to recover money had and received to and for the use of another, as distinguished from the adjective question of the manner and form of pleading in such cases, which is involved in appellant's question number 3.

■ The common count for money had and received is not subject to successful attack by either general or special demurrer. (*McDonald* v. *Pacific Debenture Co.*, 146 Cal. 667 [80 Pac. 1090]; *Fox* v. *Monahan*, 8 Cal. App. 707 [97 Pac. 765]; *Pike* v. *Zadig*, 171 Cal. 273 [152 Pac. 923]; *Camp* v. *Boyd*, 41 Cal. App. 83 [182 Pac. 60]; *Lehner* v. *McLennan*, 54 Cal. App. 491 [202 Pac. 41]; *Firpo* v. *Pacific Mut. Life Ins. Co.*, 80 Cal. App. 122 [251 Pac. 657]; *Auckland* v. *Conlin*, 203 Cal. 776 [265 Pac. 946].) This settled rule, however, does not attach to actions against counties for money had and received, for in such actions the common count is not available in its ordinary naked form. The approved and usual form of this count is very simple, consisting only in stating that defendant is indebted to plaintiff in a certain sum "for money had and received by the defendant to and for the use of plaintiff". (1 Chitty's Pleading, 16th Am. ed. 362.) ■ Demand need not be stated and is not essential to the sufficiency of the complaint. (*Quimby* v. *Lyon*, 63 Cal. 394; *Dunham* v. *McDonald*, 34 Cal. App. 744 [168 Pac. 1063]; *Piper* v. *Somerville*, 128 Cal. App. 667 [17 Pac. (2d) 1027].) Demand is, however, an essential and prerequisite to the sufficiency of a cause of action based on a claim for money had and received where a county is defendant. Section 4075 of the Political Code provides that no suit shall be brought on any claim against a county until such claim has been presented as therein provided and rejected in whole or in part. Section 4076 prescribes the form of such claim, and section 4078 prescribes a limitation of time within which suit thereon may be brought. Under provisions of law of this character, relating either to cities or counties, it has always been held in this state that the presentation of a demand in the manner provided is a necessary prerequisite to the maintenance of a

suit against such public corporation to recover money, and that a complaint containing no such allegation fails to state a cause of action. ·(*Farmers' etc. Bank* v. *City of Los Angeles,* 151 Cal. 655 [91 Pac. 795]; *Mello* v. *County of Tulare,* 99 Cal. App. 268 [278 Pac. 465]; *Beeson* v. *City of Los Angeles,* 115 Cal. App. 122, 130 [300 Pac. 993].) ■ The cause of action does not accrue in such case until such claim is presented and rejected in whole or in part. (*Spencer* v. *City of Los Angeles,* 180 Cal. 103, 119 [179 Pac. 163]; *Coen* v. *City of Los Angeles,* 70 Cal. App. 752, 762 [234 Pac. 426].) The necessity of demand in a form which requires a statement of the full details of the nature of the claim adds a new essential to the cause of action and thus renders the common count insufficient and its use unavailable.

■ The demurrer, therefore, to the fourth cause of action was not subject to the rule which ordinarily governs where a demurrer is made to the common count, but the issue of law created thereby was properly for trial by the lower court the same as in the ordinary action where the facts are fully stated and where a general demurrer is made challenging the sufficiency of the facts stated in the complaint to constitute a cause of action against the defendant. In contemplating what facts are stated in this cause of action the claim presented to the board of supervisors must be considered as a part of the pleading. The facts recited therein were made a part of the statement of the cause of action by incorporating it therein *in haec verba* by proper reference. (*Silvers* v. *Grossman,* 183 Cal. 696 [192 Pac. 534].) Having done so, the suit becomes one based on the claim (sec. 4075, Pol. Code), and the sufficiency thereof as basis for relief must appear. ■ It will be noted that this cause omits the allegation contained in the first cause relative to the *ex officio* status of defendants Lampton and Hill as clerk and chief deputy clerk of the Superior Court in and for Los Angeles County, respectively, and their being charged with the duty of keeping and preserving money or other property introduced in evidence as exhibits in actions tried in that court. This omission, however, is supplied from judicial knowledge furnished by the law of this state. The county clerk is *ex officio* the clerk of the Superior Court of the State of California in his particular county. (Const., art. VI, sec. 14; Pol. Code, sec. 4152.) A deputy county

608

clerk is also *ex officio* a clerk of the Superior Court, and his authority is coextensive with that of his principal. (*People* v. *Collins*, 6 Cal. App. 492 [92 Pac. 513]; *Touchard* v. *Crow*, 20 Cal. 150 [81 Am. Dec. 108].) ▮ We also take notice that exhibits received at trials therein are placed in the custody of the clerk of the court. In civil actions the rule in this state is that facts of which the court will take judicial notice need not be pleaded. Such facts will be considered by the court on demurrer, although not pleaded. (*Loranger* v. *Nadeau*, 215 Cal. 362 [10 Pac. (2d) 63, 84 A. L. R. 1264].) ▮ And under our view of the nature of the fourth cause herein, there must be excluded from consideration thereof the allegations that defendants ''became indebted to plaintiff's intestate'' and that the whole amount alleged is now ''due'' and ''owing'', as these quoted allegations are clearly conclusions of law, not available or tolerated except in those cases wherein our courts have held the common count to be sufficient. With these facts thus supplied to the fourth cause by judicial notice, and with the exclusion of the conclusions of law therein, it is apparent that the first and fourth causes are founded on the same facts and constitute one and the same cause of action with one and the same character and measure of relief. In which case it is proper to ignore the so-called money had and received cause or count as a separate and distinct cause of action.

This disposition of plaintiff's pleadings somewhat changes the premises in appellant's first question relating to liability. Instead of predicating the question on custody of money exhibits by the county clerk, we must base it on the premise that the custody thereof was in the clerk of the Superior Court of the State of California in and for the County of Los Angeles. The question correctly restated is, therefore, as follows: Is the county obligated to repay to the owner thereof, or his personal representative, money delivered into the custody of the clerk of the superior court as an exhibit in the trial of a case pending in such court and not returned by the clerk when rightfully demanded?

▮ As previously stated, the county clerk is by law made *ex officio* the clerk of the Superior Court of the State of California in his particular county. Where a public officer is declared by law by virtue of his office—*ex officio*—to be also the incumbent of another public office, the two offices are

as distinct as though occupied by different persons. (*People* v. *Edwards*, 9 Cal. 286; *People* v. *Durick*, 20 Cal. 94; *Lathrop* v. *Brittain*, 30 Cal. 680; *People* v. *Kelsey*, 34 Cal. 470; *People* v. *Ross*, 38 Cal. 76; *Swinnerton* v. *Monterey County*, 76 Cal. 113 [18 Pac. 135]; *Webster* v. *Board of Education*, 140 Cal. 331 [73 Pac. 1070]; *More* v. *Board of Supervisors*, 31 Cal. App. 388 [160 Pac. 702]; *Hammond Lumber Co.* v. *Moore*, 104 Cal. App. 528, 535 [286 Pac. 504].) Each of several departments of the superior court in a county is a court, and the clerk of each department is the clerk of that court. (*Keller* v. *Gerber*, 49 Cal. App. 515 [193 Pac. 809].) ■ The duties of clerks are in general to serve the court in a ministerial capacity, to act as custodians of its records and to perform such duties as are prescribed by law or imposed by the lawful authority of the court. Under section 1954 of the Code of Civil Procedure material objects may be admitted in evidence at the trial of a case under the sound discretion of the court. Upon admission of such material or demonstrative evidence the object is taken into physical custody by the clerk of the court, subject to the order of court for its subsequent disposition. Section 1952 of the same code, added in 1931, recognizes this character of custody in authorizing the court to order destruction or other disposition of any exhibit, except lien and title instruments, introduced in evidence in the trial of a civil action, where such exhibit remains "in the custody of the court" for a certain period. ■ It is a well-known rule that property or funds in the legal custody of the clerk of a court, as such, are in the custody of the law and cannot be attached, seized or distrained without leave of court. The custody of the officer, however, is not necessarily nor always the custody of the law. While money is in legal custody of the clerk of the court as an exhibit in a criminal action, the custody is that of the law. After final conviction and the termination of the case the purpose of legal custody of the money is presumably accomplished, and it may become subject to legal process unless the court otherwise directs. (*Emmanuel* v. *Sichofsky*, 198 Cal. 713 [247 Pac. 205, 48 A. L. R. 580].) ■ In respect to deposits with the clerk, the general rule is that before funds may be said to be in the custody of the law, when delivered to the clerk of the court, an order of court is required to make such

deposit with the clerk. (*Colver* v. *W. B. Scarborough Co.*, 73 Cal. App. 455 [238 Pac. 1110].) Herein the money in question was received in evidence as an exhibit under order and direction of the court, and by the court given into the custody of the clerk for safekeeping and subject to further order of the court. The court alone had power to order disposition of the money after the purpose of such legal custody had been accomplished.

There is no allegation in the complaint, or in the claim on which it is based, that this money or any part of it was ever received by the county, or ever used or expended for or to the benefit of the county. The liability of the county for the return of this money can only be based on allegations and proof of receipt thereof or a conversion thereof to the use or benefit of the county. (*Herzo* v. *San Francisco,* 33 Cal. 134; *Municipal Bond Co.* v. *City of Riverside,* 138 Cal. App. 267 [32 Pac. (2d) 661]; *Papeschi* v. *LaCava,* 93 Cal. App. 209 [269 Pac. 731].) And under the allegations it is made clear that the clerk of the court did not receive it as the agent of the county nor in any way for it, or on its behalf. Therefore the county did not become the debtor for this money, nor liable to recovery thereof as of moneys had and received to and for its use and benefit. (*Dewey* v. *Board of Supervisors of Niagara County,* 62 N. Y. 294; *Gray* v. *Board of Supervisors of Tompkins County,* 93 N. Y. 603; *Estep* v. *Koekuk County,* 18 Iowa, 199; *Randles* v. *Waukesha County,* 96 Wis. 629 [71 N. W. 1034].)

In the early case of *Sherbourne* v. *Yuba County,* 21 Cal. 113 [81 Am. Dec. 151], the Supreme Court held that a *quasi* corporation, like a county, is not liable for the acts of officers or employees which it appoints in the exercise of a portion of the sovereign power of the state, by the requirement of public law, and simply for the public benefit, and for a purpose from which the county, as a corporation, derives no benefit. In the case of *Crowell* v. *Sonoma County,* 25 Cal. 313, the same court held "that the relation between a county and its road overseer bore no available resemblance to that of master and servant, nor that of employer and employee. The office of road overseer in the defendant county was not created by that county but by public law instead, and all the duties connected with the office were created in like manner. The county had no power even to designate the incumbent of the office, for by the act referred

to the power of appointing road overseers is conferred upon the board of supervisors; and in exercising that power the board acts not under the county but under the law''. The instant case parallels the one just quoted. Under the charter governing Los Angeles County the board of supervisors appoints the county clerk. The Constitution and code provisions make such county clerk *ex officio* clerk of the Superior Court in his county. Neither the county as a public corporation nor its board of supervisors had power to direct or control any action of the county clerk while acting in the capacity of clerk of the superior court. The duties of such clerk are prescribed by general law of the state and by orders of the court of which he is clerk. As such clerk he is not answerable to the county, nor is the county liable for his tortious acts. (*Municipal Bond Co.* v. *City of Riverside, supra.*) The receipt of the money in evidence and its bailment to the clerk of the court as alleged in the complaint was a transaction between the owner of the money on the one hand and the court and its clerk on the other, to which the County of Los Angeles was a stranger and therefore unaffected by and not responsible for any subsequent loss or misappropriation of such money while in the custody of such clerk.

The judgment is affirmed.

Stephens, P. J., and Crail, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 31, 1935.