[Civ. No. 3484. Fourth Dist. Oct. 29, 1947.]

COUNTY OF LOS ANGELES, Respondent, v. COUNTY OF IMPERIAL, Appellant.

L. J. Mouser, District Attorney, Don C. Bitler, Chief Deputy District Attorney, and James E. Marable, Deputy District Attorney, for Appellant.

Harold W. Kennedy, County Counsel, Gerald G. Kelly and Robert L. Trapp, Deputy County Counsel, for Respondent.

BARNARD, P. J.—This is an action to recover the costs incurred in furnishing hospital treatment, from April 6, 1942, to August 22, 1942, for an indigent resident of the de-

fendant county. The case was tried in Inyo County, by stipulation of the parties, and was submitted on stipulated facts. The defendant has appealed from a judgment awarding the plaintiff $764.43.

One Wilson, a resident of Imperial County, was treated in the Imperial County Hospital from January 31, 1942, to April 3, 1942. Since he had made no improvement he was advised by Dr. Heald, Assistant County Physician, to go to Los Angeles County. It was necessary for Dr. Heald to refer the patient to some physician or hospital outside of Imperial County as there were no facilities therein for the treatment necessary for his condition. Dr. Heald told the patient to go to White Memorial Hospital in Los Angeles, giving him a letter addressed "To Whom it May Concern" stating the general facts of his condition, that there was no one in Imperial County who did the necessary work, and that the patient had been advised that his only chance for recovery was to be in the hands of a qualified chest surgeon. On arriving at the White Memorial Hospital Wilson disclosed that he was without funds and was referred by that institution to the Los Angeles County General Hospital.

He was admitted to the Los Angeles County General Hospital on April 6, 1942, as the admitting physician found him to be acutely ill and in need of immediate hospitalization. In tracing the events which followed we will, for convenience, refer to the Los Angeles County General Hospital as "the hospital," to the Welfare Department of Imperial County as "the welfare department" and to the Board of Supervisors of Imperial County as "the board." On April 7, the hospital sent a telegram to the welfare department asking it to wire an authorization to pay the bill for Wilson, stating that he had been sent to Los Angeles County without funds by Dr. Heald for the reason that Imperial County had no facilities for his care. The welfare department did not refer this matter to the board, but on April 9 wired a reply stating that it was not authorized to act and that the board was the only body empowered to comply with the request. On April 10, the hospital wired the board asking it to wire an authorization to pay for the hospital care of Wilson, stating that he had been sent to Los Angeles County without funds by Dr. Heald because there were no facilities in that county to give the needed treatment. The board referred this request back to the welfare department which, on April 13, wrote the hospital that its request would be referred to the board at its

meeting on April 20. On or about April 22, the welfare department phoned the hospital and asked for an estimate of the cost of this care. On April 24, the hospital wired the welfare department stating that the care up to April 22 was $74.46, that the diagnostic work was not completed, and that it was not possible to prognosticate the extent of care. Subsequently, the hospital "was given to understand that Imperial County would not commit itself without a definite statement of cost" which the hospital "could not issue since . . . no financial costs could be estimated as diagnosis was impossible at that time."

Nothing more was heard from Imperial County and on May 22 the hospital wired the welfare department setting forth the bad condition of the patient, stating that prolonged hospitalization was indicated and asking authorization to pay for this care. On May 25, the welfare department wrote to the hospital asking to be informed as to the daily cost of care, plus laboratory charges, and also as to the type of treatment necessary in order that they could ascertain whether or not such treatment could be given locally. At that time it was not possible for the hospital to render an estimate of specific financial costs as no one knew what the correct diagnosis was nor what would be needed in the way of treatment. On June 12, the hospital wired the welfare department stating that it was still unable to establish a diagnosis but that chest surgery was indicated, stating that the cost per day was $4.44 without extras, asking them to see Dr. Heald for an answer as to whether Imperial County could give the necessary care, and stating that unless authorization to pay the bill was received soon from the board they would have to return the patient to Imperial County.

On June 24, the hospital wrote to the State Department of Social Welfare outlining what had occurred, stating that no reply had been received to their wire of June 22, and asking that department whether they should jeopardize the life of this patient by sending him to the county of his residence but which had no facilities for treatment or, if not, who would pay for his care?

During July, the hospital's doctors succeeded in diagnosing the patient's trouble and effective treatment was secured. The bill rendered indicates that surgery was employed. On August 14, the doctors expressed the opinion that the patient was able to travel to Imperial County but expressed doubt as to its advisability at that time. On August 22, the patient

was discharged. A claim for payment for the services rendered was duly filed with the board and denied by it.

Several months later, the State Department of Social Welfare held a hearing in the matter, after which it rendered a decision stating that Wilson was a resident of Imperial County, but refusing to decide who was responsible for the payment of his care while in the Los Angeles County Hospital.

Although findings were unnecessary, in view of the stipulated facts, the court made findings of fact. Among other things, it was found that on April 22, the defendant advised the plaintiff to return the patient to defendant county for treatment; that plaintiff did not return the patient and continued with his hospitalization; that because of the condition of the patient at that time it was not advisable or humane for him to be returned to the defendant county; and that there was no unreasonable delay in furnishing an estimate of costs because no one knew what the diagnosis was or what would be needed. Because it is largely relied on by the appellant, it should be observed that there is nothing whatever to support a finding that on April 22, the appellant advised the respondent to return the patient to Imperial County for treatment, although there is support for findings to the effect that he could not be returned because of his condition. The only evidence in the record which has any relation to a request for a return of the patient is that contained in the letter of the welfare department of May 25, asking that it be advised as to the daily cost of care, and also concerning what treatment was necessary in order that it could be ascertained whether or not treatment could be given locally.

The appellant contends that a recovery in such a case as this is not authorized by any statute, that there was no express agreement between these counties as permitted by section 2503 of the Welfare and Institutions Code, that the matter is strictly statutory, and that since no statute imposes liability, the doctrine of implied contract is not applicable.

The judgment is sufficiently supported by the statutes and by the acts and conduct of the parties, which were sufficient to constitute an implied contract. Section 2500 of the Welfare and Institutions Code imposed an obligation on the appellant to care for this indigent person. While section 2502 gave the respondent the right to return the patient to Imperial County this was neither necessary nor reasonably possible under the circumstances. Section 2503 permits two counties

to enter into a contract, under which the county wherein an indigent resides will pay another county for his support. While that section provides for an express contract there is nothing therein which forbids or makes illegal an accomplishment of the same result through an implied contract. Subdivision 7 of section 4307 of the Political Code provides that the board of supervisors may, in its discretion, authorize the payment of expenses incurred in treating indigent patients in a hospital operated by another county. These sections sufficiently authorize and empower a board of supervisors to pay such bills, where the circumstances warrant, and it cannot be said that such payments are entirely unauthorized by statute. Section 4075 of the Political Code, in requiring the presentation of claims, recognizes that they may be based upon an implied contract by requiring the filing of any claim whether it "be founded upon contract, express or implied, or upon any act or omission of the county or any officer or employee thereof."

The appellant county knew that the respondent county was giving this treatment in an emergency case and that it was demanding and expecting to be reimbursed therefor. While the appellant county refused to commit itself or, more properly speaking, delayed in committing itself, it allowed the situation to go on, continued to ask for information which it was not then possible for the respondent to furnish, and at the same time it avoided making any definite statement to the effect that it denied responsibility or would eventually refuse to pay for the service being rendered. The statutory obligation, the statutory power and the action of the parties are sufficient to constitute a situation from which the law will imply an agreement to repay the costs thus expended. Being a claim which the board had the right and power, under the law, to allow and order paid, it is one for which it became liable under the well-known principles of an implied contract. (*County of Tulare* v. *County of Kern*, 132 Cal.App. 462 [22 P.2d 750]; *Union Bank & Trust Co.* v. *Los Angeles County*, 2 Cal.App.2d 600 [38 P.2d 442].) The board of supervisors of the appellant county exercised its discretion by permitting these treatments to go on, with full knowledge of the facts, without taking any more definite advance action.

The judgment is affirmed.

Marks, J., and Griffin, J., concurred.