[Civ. No. 1427. Fourth Appellate District.—April 24, 1934.]

MUNICIPAL BOND COMPANY (a Corporation), Plaintiff and Appellant, v. CITY OF RIVERSIDE, Defendant and Appellant; H. N. DUNBAR et al., Respondents.

268

George W. Crouch and Roscoe R. Hess for Plaintiff and Appellant.

Eugene Best for Defendant and Appellant.

W. C. Smith and Everett H. Smith for Respondents.

Lawler & Degnan, Freston & Files, James A. McLaughlin, Clarence J. Walker and John L. Rush, as *Amici Curiae* on Behalf of Plaintiff and Appellant.

JENNINGS, J.—This action was instituted by the holder of certain street improvement bonds issued pursuant to the provisions of the Improvement Act of 1911 (chap. 397, Stats. 1911, p. 730) to recover from the city treasurer of the City of Riverside and from the surety on his official bond and from the City of Riverside the sum of $2,758.93 which it was alleged had been paid to said city treasurer by the owners of property upon which assessments had been levied to pay the cost of street improvements and for which assessments bonds had been issued and which said sum was alleged to have been appropriated by the city treasurer to his own use. The City of Riverside filed its answer denying liability to the plaintiff and a cross-complaint against its co-defendants, the city treasurer and the surety on his official bond, seeking on behalf of the owners of bonds to recover from said cross-defendants the sum of $5,607.08 which was alleged to have been paid to said city treasurer by property owners in payment of coupons upon bonds issued as aforesaid and in partial redemption of said bonds and appropriated by said city treasurer to his own use. The city treasurer and the surety on his official bond filed separate answers both to plaintiff's complaint and to the cross-complaint of the City of Riverside denying liability respectively to plaintiff and to the city. Upon the conclusion of the trial of the issues framed by the pleadings the trial court rendered judgment in favor of plaintiff for the amount sought with interest thereon against the city treasurer and denied recovery against the city and the surety on the official bond of the city treasurer and denied recovery to the City of Riverside against the city treasurer and his surety on the city's cross-complaint. From that portion of the judgment which denied recovery from the City of Riverside and from the surety on the official bond of the city treasurer the plaintiff appealed. The City of Riverside also appealed from that portion of the judgment which denied

to said city recovery on its cross-complaint. These appeals are presented on the judgment-roll alone.

After the City of Riverside had perfected its appeal as aforesaid a stipulation dismissing said appeal was entered into between the counsel for the respective parties and was filed with this court, whereupon the court made its order dismissing said appeal.

Thereafter, the City of Riverside presented a motion to dismiss the appeal taken by plaintiff from that portion of the judgment denying recovery against the city or to affirm the judgment rendered by the trial court in favor of the city. At the time this motion for dismissal or affirmance came on for hearing the plaintiff moved the court to set aside the order dismissing the appeal of the City of Riverside from that portion of the judgment which denied recovery to the city on its cross-complaint from the city treasurer and the surety on his official bond. The appeal of the plaintiff on the merits and the aforesaid motions were submitted to the court for decision. Plaintiff's appeal from that portion of the court's judgment denying recovery from the City of Riverside and from the surety on the official bond of the city treasurer will herein be first considered.

It may be observed at the outset that the opening brief of appellant, Municipal Bond Company, was confined to a discussion of the incorrectness of that portion of the judgment which denied recovery from the surety on the official bond of the city treasurer and no effort was made to show that the court had erred in refusing recovery from the City of Riverside. This fact constituted the principal ground urged by the City of Riverside in support of its motion to dismiss the appeal or affirm the judgment. It is at least open to serious question if appellant has not waived its appeal as to the city. Nevertheless, we feel disposed to consider the appeal as taken on its merits and we shall therefore first discuss the contention that the trial court erred in refusing recovery from the City of Riverside.

The court found that no portion of the total amount paid to the city treasurer upon bonds issued under the provisions of the 1911 Street Improvement Act was ever deposited in the general fund of the City of Riverside and that none of the funds so collected were expended for the

benefit of the city. The court also found that the city treasurer had collected sums of money which amounted to a total of $6,813.16 as payments on bonds issued under the provisions of the 1911 Street Improvement Act and that of such amount he had failed to account to the 1911 street improvement fund or to the owners of bonds or to the City of Riverside or to his successor in office to the extent of $5,607.08, and that neither he nor anyone in his behalf had paid said sum of $5,607.08 to the 1911 street improvement bond redemption fund or to the bond owners or to his successor in office. Since this appeal, as above noted, is taken on the judgment-roll, we must assume that the aforesaid findings are not lacking in evidentiary support. The presence of these findings thus supported would seem, on first impression, to require affirmance of that portion of the judgment which denied recovery from the city. It appears, however, that it now contended that the city should be held liable on the theory that it is responsible for the derelictions of its agent, the city treasurer. This contention necessitates analysis of the cause of action which is alleged in the complaint. This pleading alleges that the city treasurer during his term of office collected as payments on coupons upon bonds owned by the Municipal Bond Company a certain sum of money which he deposited in a common fund composed not only of payments upon bonds held by appellant but of all payments from other like bonds which fund was "known as the street improvement redemption fund or some other designation of similar import" and that he thereafter withdrew from the street improvement redemption fund various sums of money which he deposited in the general fund of the city so that the street improvement redemption fund was thereby reduced by a sum of money in excess of $4,500 below the requirements for paying to the holders of such improvement bonds the amounts which had been paid on account of said bonds and that thereafter the city treasurer withdrew from the general fund of the city and misappropriated to his own use a sum of money in excess of the amount which he had withdrawn from the street improvement redemption fund and had deposited in the general fund. It is apparent, therefore, that the civil liability of the city treasurer is, in the final analysis, based upon the alleged commission by such officer

of a tort, i. e., conversion of funds. We must then consider whether any liability was cast upon the city by reason of the tort of its agent.

In this connection, we must bear in mind the principle well established in California that a municipal corporation is not liable for the torts of its agents committed in the performance by them of public or governmental functions as distinguished from private or proprietary functions (*Kellar* v. *City of Los Angeles,* 179 Cal. 605 [178 Pac. 505]; *City of Pasadena* v. *Railroad Com.,* 183 Cal. 526 [192 Pac. 25, 10 A. L. R. 1425]; *Morrison* v. *Smith Bros., Inc.,* 211 Cal. 36, 39 [293 Pac. 53]; *Harding* v. *City of Hawthorne,* 114 Cal. App. 580 [300 Pac. 42]; *Pittam* v. *City of Riverside,* 128 Cal. App. 57 [16 Pac. (2d) 768]). It is also settled in California that the improvement of the highways within a municipality is a purely governmental affair (*McNeil* v. *City of South Pasadena,* 166 Cal. 153 [135 Pac. 32, 48 L. R. A. (N. S.) 138]). It follows therefore that the City of Riverside in proceeding to improve streets within its boundaries in accordance with the provisions of the 1911 street improvement statute was acting in a purely public or governmental capacity and may not be held liable for the conversion of funds paid to one of its officers upon bonds which were issued to cover assessments levied against property to pay the cost of such street improvements.

There remains for consideration that portion of the judgment which denied to appellant, Municipal Bond Company, recovery from the surety on the official bond of the city treasurer of the City of Riverside. Respondent, Maryland Casualty Company, presents two contentions in support of this part of the judgment. These are, first, that its principal, the city treasurer, was not acting in his official capacity as city treasurer, in receiving the funds that were paid to him by property owners to be applied on the principal and interest of the street bonds and, second, that, in any event, only the obligee named in the bond has the right to bring suit on the bond. It is obvious that if either of these contentions is correct the judgment must be affirmed. It is our opinion that the second of the aforesaid contentions is correct and that appellant bondholder had no right of action on the official bond of the city treasurer.

The court found that "during the last term of office of the defendant city treasurer, to-wit: the term beginning Jan. 2, 1928, there was paid to said H. N. Dunbar as such city treasurer, in payment of the coupons upon bonds owned and held by the plaintiff herein . . . and the redemption in part of such bonds and penalties thereon as provided by law, and for the use and benefit of the plaintiff herein as the owner and holder of said bonds", certain sums of money constituting a total amount so paid in the sum of $2,758.93. The court neither found the dates on which the various sums were paid nor did it find the date or dates on which the abstraction of funds by the city treasurer occurred. The court did, however, find that prior to the commencement of this action and on August 7, 1929, appellant bondholder had made demand on the defendant, city treasurer, and on respondent, Maryland Casualty Company, for the amount of $2,026.05 of said aforesaid total sum, and on November 6, 1929, for the sum of $732.88 of said total amount, and that payment thereof in each case was refused. Inasmuch as the possession of the funds by the city treasurer was lawful, it would appear that whatever right of action appellant had against the city treasurer and the surety on his bond accrued no earlier than the making of the demands, bearing in mind that the liability of the city treasurer is based upon the conversion by this officer to his own use of funds rightfully belonging to the bondholder and the liability sought to be fastened upon the surety is predicated upon this same conversion of funds which is alleged to be a breach of official duty covered by the obligation of the official bond (*Atwood* v. *Southern Cal. Ice Co.,* 63 Cal. App. 343 [218 Pac. 283]). Whether the bondholder, which for the purposes of this opinion may be conceded to have been aggrieved by the acts of conversion perpetrated by the city treasurer, has a right of action on the bond, depends first, on the obligation of suretyship, and second, on whether the bondholder has been given a right of action by statute.

With respect to the contract of suretyship, it is at once evident that the obligee named in the bond is the City of Riverside and that the surety contracted solely with the city that it would be liable only to the city if a breach of the conditions specified in the bond should occur. There-

fore, the bondholder may recover only if a right of action has been given to it by statute. Appellant, bondholder, confidently maintains that it possesses such right of action by virtue of the provisions of section 961 of the Political Code. This statute is in the following language:

"*Suit on bonds.* Every official bond, given pursuant to law, executed by any officer of the state, or of any county or any subdivision thereof, or of any town or city organized under the provisions of this code, or by any officer of a city or county governed by a freeholders' charter, is in force and obligatory upon the principal and sureties therein to and for the state of California, or such municipal corporation, and to and for the use and benefit of all persons who may be injured or aggrieved by the wrongful act or default of such officer in his official capacity; and any person so injured or aggrieved may bring suit on such bond, in his own name, without an assignment thereof."

At first blush, appellant's contention would appear to be well founded. ■ However, it must be conceded that the matter of requiring municipal officers and employees to furnish bonds is a municipal affair and that the provisions of a municipal charter relating to municipal affairs are controlling over general state laws. Therefore, in order to arrive at a correct determination of the problem it will be necessary to examine the provisions of the city charter which was in effect at the time appellant's right of action accrued.

This charter was adopted in 1929 and became the organic law of the municipality on July 1, 1929 (Stats. 1929, p. 2102). In section 3 of article I of this charter we find the following language: "To make and enforce all laws and regulations in respect to municipal affairs, subject only to the restrictions and limitations provided in this charter." By this language the municipality clearly indicated its intention to avail itself of the privilege afforded by sections 6 and 8 of article XI of the Constitution of California as amended in 1914 and upon municipal affairs to make itself independent of control by general laws. As heretofore stated, the matter of requiring bonds of municipal officers and employees is strictly a municipal affair. ■ We must therefore further examine the city charter of Riverside which was in effect at the time that appellant's cause of

action accrued for the purpose of discovering whether it contains any provision giving to appellant or others similarly situated a right of action on the official bond of the city treasurer in which the obligee named is the City of Riverside. Such examination discloses that the charter is silent on the subject. There are provisions in sections 22, 23, 24, 25, 26 and 27 of article IV of the charter which require that officers and employees of the city shall give and execute official bonds which must be approved as to form by the city attorney and as to substance by the city council, and which require that various designated city officers shall execute bonds to the city in specified amounts which may be increased or decreased by the city council by ordinance. Section 27 contains the following language which appellant contends is applicable to the problem: "The form and conditions of all official bonds, the affidavits and justification thereon shall be as is required by the general laws of the state in force at the time such bonds are given." It is urged that this language makes applicable section 961 of the Political Code. We think not. Certainly the conferring of a right of action upon one other than the obligee designated in the bond has no bearing upon the form of the bond. Nor do we think that the giving of a right of action may properly be denominated a condition of the bond. A condition of a bond refers to the occurrence of some event which causes the obligation of the bond to become effective. ▮ The condition of the bond of the city treasurer in the present proceeding was that he should faithfully perform the official duties pertaining to his office. So long as he did this there was no obligation which the surety was required to perform. When, however, the principal committed some act which amounted to a breach of his official duty or failed to perform a duty enjoined upon him by law the obligation of the surety came into existence. The fact that the essential act upon which the very existence of the surety's obligation depended had come to pass had nothing whatever to do with the conferring of a right of action upon the obligation. The surety had agreed to be bound to the City of Riverside and to the city alone. If any other person could have a right of action on the bond it would have to be by virtue of some statute which expressly conferred such right. The charter contains no other provision which purports to give to any

person other than the obligee named in the bond a right of action upon the obligation of the surety. Since the matter of requiring bonds of municipal officers is a municipal affair and the charter of 1929 which was in effect when the right of action on the bond accrued is silent on the subject of conferring a right of action upon anyone other than the obligee of the bond, and since the City of Riverside has availed itself of the privilege afforded by sections 6 and 8 of article XI of the California Constitution, as amended in 1914, and has expressly declared its independence from the control of general laws as to municipal affairs, it follows that section 961 of the Political Code is not applicable and a right of action does not exist in favor of appellant, bondholder on the official bond of defendant, the city treasurer (*Sunter* v. *Fraser,* 194 Cal. 337 [228 Pac. 660]).

The disposal of this appeal on its merits renders it unnecessary to give consideration to the motion of respondent, City of Riverside, that the appeal be dismissed or the judgment in its favor be affirmed.

There remains finally for disposition the motion of appellant, Municipal Bond Company, that the order of this court dismissing the city's appeal from that portion of the judgment which denied to the city recovery from the surety on the official bond of the city treasurer be vacated and set aside. This motion appears to be founded on the theory that the city stands in the position of a trustee for all holders of bonds issued by the city treasurer of Riverside pursuant to the provisions of the 1911 Improvement Act, and that the beneficiaries of this trust have a right to insist that the trustee shall meticulously perform its duty as trustee and that it shall take no action that may conceivably be injurious to the rights of the beneficiaries. For intelligent consideration of this question a brief recital of certain facts which bear upon it is required.

On November 19, 1932, the City of Riverside gave notice that it appealed from that portion of the judgment which denied to it recovery from the defendant, city treasurer, and from the Maryland Casualty Company, the surety on the official bond of the city treasurer. Thereafter, the City of Riverside filed with this court its briefs in support of its appeal. It was the declared position of the city upon this appeal that the city was the trustee for the bondholders,

and that in such capacity it was entitled to seek to compel the surety on the official bond of its defaulting officer to reimburse the city to the end that the bondholders might receive payment of moneys collected for their benefit by said city treasurer. On June 9, 1933, there was filed with this court a stipulation entered into between the city attorney of the City of Riverside, and counsel representing the Maryland Casualty Company, providing that the appeal of the City of Riverside ''may be and is hereby dismissed with prejudice forthwith as against H. N. Dunbar and said Maryland Casualty Company''. Thereupon, this court, on June 10, 1933, made its order dismissing said appeal with prejudice as against H. N. Dunbar and the Maryland Casualty Company. On August 9, 1933, a *remittitur* issued out of this court directed to the trial court. On November 21, 1933, appellant, Municipal Bond Company, filed its notice of motion to set aside the order dismissing the appeal taken by the City of Riverside. It is obvious that the granting of this motion will necessarily require the recall of the *remittitur* issued on August 9, 1933.

■ It is the general rule that an appellate court cannot exercise jurisdiction over a case in which a *remittitur* has been issued by its order and filed in the trial court for the reason that the issuance of the *remittitur* has divested the appellate court of jurisdiction. This rule rests upon the presumption that all of the proceedings which resulted in the issuance of the *remittitur* have been regular and that no fraud or imposition has been practiced upon the appellate court or upon the opposite party to the appeal. If it is made to appear that such fraud or imposition has been practiced the appellate court will assert its jurisdiction and recall the *remittitur* upon the ground that the jurisdiction of the court cannot be divested by an irregular or improvident order and that an order obtained upon a false representation or suggestion is not the order of the court and may be treated as a nullity (*Trumpler* v. *Trumpler,* 123 Cal. 248 [55 Pac. 1008]; *Richardson* v. *Chicago etc. Co.,* 135 Cal. 311 [67 Pac. 769]; *Isenberg* v. *Sherman,* 214 Cal. 722 [7 Pac. (2d) 1006]; *Crenshaw Bros.* v. *Southern Pac. Co.,* 42 Cal. App. 44 [183 Pac. 208].)

It is not contended by appellant that the issuance of the *remittitur* as aforesaid was accomplished through fraud or

imposition practiced upon this court or upon the opposite parties in the appeal of the City of Riverside, or upon appellant, bondholder. If such a contention were advanced it would be unavailing. The stipulation for dismissal of the city's appeal is accompanied by a certified copy of the minutes of the city council which shows on its face that the council authorized the city attorney to compromise and settle the action brought by the city against the city treasurer and the surety on his bond and the city's appeal on its cross-complaint upon the payment to the city of the sum of $2,900 and upon the agreement of the surety to pay any judgment rendered in the action brought by appellant, Municipal Bond Company, against the city and the surety on the city treasurer's bond. The stipulation for dismissal of the city's appeal was therefore authorized and it cannot be said that any fraud or imposition was practiced upon the court or other parties to the action through the making of the stipulation and the filing of it with the court in which the appeal was pending. Nor may it fairly be said that the order of dismissal was made through inadvertence. This court was in possession of all facts in connection with the appeal and was fully advised in the premises.

It appears to be the contention of appellant that it was entitled to notice of the application for dismissal of the appeal and that the order of dismissal having been made *ex parte* without notice to appellant should now be vacated. In this regard it must be noted that, although the order dismissing the appeal was made on June 10, 1933, the *remittitur* which divested this court of jurisdiction of the city's appeal was not issued until sixty days thereafter. It seems obvious that although appellant had not been notified of the application for dismissal it was not, under the circumstances, discharged of the duty to keep itself informed of the status of the appeal, particularly if it expected to rely on the cause of action alleged in the city's cross-complaint. Upon the hearing of the motion for vacation of the order of dismissal counsel for appellant, Municipal Bond Company, presented to this court a communication addressed to him by the city attorney of the City of Riverside on May 25, 1933, in which is contained the following statement: ''We have tried to effect a settlement with the Maryland Casualty Company for the shortage in the general fund of the treas-

urer's office, and when that is done, we would like to have the record clear as to the liability of the city." The letter concludes with a request that appellant consent to a dismissal of its appeal against the city, "so that the record would be clear, and it would not be necessary to concern ourselves any further with the appeal". To this letter counsel for appellant replied on May 27, 1933, in the following language: "Your letter of May 25, 1933, at hand, stating that you have tried to effect a settlement with the Maryland Casualty Company on behalf of the city and you wondered if we would consent to giving you a dismissal of the appeal against the city. Please be advised that we would not under any circumstances do so. It is apparent that if our construction of the law is deemed correct by the appellate court that the judgment might be reversed under an interpretation of law which would declare rights existing as against the city, not only in favor of the plaintiff but perhaps in favor of the Casualty Company." It is therefore evident that appellant was advised two weeks in advance of the filing of the stipulation for dismissal of the city's appeal, that the city was endeavoring to effect a settlement of its claim for the shortage in its general fund against the surety on the city treasurer's bond, and that in spite of this fact it made no inquiry regarding the progress of the negotiations for settlement between the city and the surety, and took no action of any kind until November 21, 1933, when it filed this motion to vacate the order of dismissal made more than five months prior thereto.

It appears, therefore, that, under the circumstances presented, appellant, Municipal Bond Company, has failed to make such showing as is required to justify a recall of the *remittitur* and that its motion to vacate the order of this court dismissing the appeal of the City of Riverside should be denied (*Estate of Ross,* 189 Cal. 317 [207 Pac. 1014]; *Petersen* v. *Civil Service Board,* 68 Cal. App. 752 [230 Pac. 196]).

For the reasons stated herein the motion of respondent, the City of Riverside, to dismiss the appeal taken by appellant, Municipal Bond Company, is denied and that portion of the judgment from which the appeal has been taken by the Municipal Bond Company is affirmed.

MARKS, J., Concurring and Dissenting.—I concur in the order affirming that part of the judgment from which the appeal is taken by the Municipal Bond Company. I also concur in the order denying the motion of the City of Riverside to dismiss the appeal of the plaintiff.

For brevity I will hereafter refer to the Municipal Bond Company as the plaintiff, the City of Riverside as the City, H. N. Dunbar as the treasurer, and the Maryland Casualty Company as the surety.

My reasons for concurring in the order of affirmance of that portion of the judgment from which the plaintiff has appealed are not fully set forth in the foregoing opinion. To make my position clear I must add the following: The first charter of the city was adopted in 1907. (Stats. 1907, p. 1277.) This charter remained in effect until July 1, 1929, when the present charter became operative. (Stats. 1929, p. 2102.) Under the first charter the city did not take advantage of the provisions of section 6, article XI, of the Constitution, to govern its own municipal affairs which were, therefore, controlled by the provisions of the general laws of the state. ▉ Therefore, I am of the opinion that the plaintiff might have had the right to recover those moneys the treasurer misappropriated from the 1911 improvement bond redemption fund between the effective date of the amendment to section 961 of the Political Code (Stats. 1925, p. 17), and July 1, 1929. ▉ But the plaintiff saw fit to appeal on the judgment-roll alone. The evidence is not before us. The findings do not disclose the dates of the collections or embezzlements by the treasurer. We are required to presume that the evidence supports the judgment in all particulars. We must therefore presume that collections, or at least the embezzlements, took place after July 1, 1929. The bonds were in small amounts and the payments of the assessments must have been proportionately small. It seems to me a violent assumption to have to conclude that the treasurer embezzled a total of $5,607.08 from these small payments during the short time between July 1, 1929, and his removal from office, and none before July 1st. In view of the application of the imperative presumption that the evidence supports the judgment, I find no escape from this conclusion, and,

therefore, find it necessary to concur in that portion of the judgment refusing any relief to the plaintiff.

I dissent from that portion of the order which denies the Municipal Bond Company's motion to vacate and set aside the order dismissing the appeal of the City of Riverside from that portion of the judgment which denied the relief prayed for in its cross-complaint.

The city filed its cross-complaint to recover $5,607.08 from the treasurer and the surety, which sum it alleged the treasurer had collected as assessments under the Improvement Act of 1911, and appropriated to his own use. The trial court found this to be true. The cross-complaint was filed upon the theory that the city acted in the capacity of trustee for the benefit of all the bond owners and could require the treasurer and the surety to return the money to the 1911 improvement bond redemption fund so that it could pay the bond owners, including plaintiff, the money due them. The trial court found that of the money misappropriated, $2,758.93 was due the plaintiff, leaving a balance of $2,848.15 due the other bondholders not parties to this action.

Section 60 of the Improvement Act of 1911 makes it an official duty of the treasurer to collect, keep and disburse the assessments collected under that act. The city charter of 1929 contained a provision imposing like duties upon him. The bond of the treasurer indemnified the city against loss occasioned by a breach of official duty by that officer.

In the case of *City of Oakland* v. *De Guarda*, 95 Cal. App. 270, pp. 284, 285 [272 Pac. 779, 784, 273 Pac. 819], the City of Oakland brought suit as trustee for property owners upon faithful performance bonds given in a contract awarded under the Improvement Act of 1911. In holding that the city could recover as trustee under a bond made payable to it for the benefit of the owners for loss occasioned them by a breach of the contract, the court said: "By the explicit language of the bonds both defendants are liable to someone if the contract is not performed, and by fair and equitable implication they are liable to those interested in the contract. In substance the only contention of the defendant National Surety Company here is, not that the surety company is not liable under the bond, but that the surety company is not liable to the plaintiff herein, suing as trustee for

the benefit of the property holders. But equity will not permit the execution of a trust to fail for want of a sufficient trustee, for equity looks to the intent rather than to the form, and regards that as done which ought to be done and goes beneath the mere external form to the substance of things for the purpose of making its remedies more complete, thereby awarding and securing to the person beneficially interested the remedy to which he is entitled by the principles and doctrines of equity. . . .

"In Missouri cases cited and relied upon by counsel (*St. Louis* v. *Wright Contracting Co.*, 202 Mo. 451 [101 S. W. 6, 119 Am. St. Rep. 810]; *St. Louis* v. *Wright Contracting Co.*, 210 Mo. 491 [109 S. W. 6]; *St. Louis* v. *Anderson*, 229 Mo. 181 [138 Am. St. Rep. 414, 129 S. W. 528]; *City of St. Joseph* v. *Rackliffe-Gibson Const. Co. et al.*, (Mo. App.) 203 S. W. 223), it does not appear that the statute construed by the learned court contained the numerous provisions enacted in our statute above showing the direct and tangible interest taken by the city through its council and street superintendent in the performance of the contract and the doing of the work for the benefit of the property holders, and the direct interest taken by the city for the benefit of the contractor in requiring the property holder to bear the burdens and pay the expenses of the work, all of which should properly vest in the property holder sufficient correlative rights to enable them to avail themselves of the agency and trusteeship of the city in the enforcement of the statutory bond given to the city for the proper protection of the property holders under the contract in question.

"In the case at bar the same reasoning and the same rule is applicable as was announced by our Supreme Court in the case of *Los Angeles S. Co.* v. *National Surety Co.*, 178 Cal. 247 [173 Pac. 79], where the court used the following language taken from the United States Supreme Court in the case of *Equitable Security Co.* v. *U. S., to Use of McMillan*, 234 U. S. 448 [58 L. Ed. 1394, 34 Sup. Ct. Rep. 803]: 'The surety is charged with notice that he is entering into what is in a very proper sense a public obligation, and one that will be relied upon by persons who can in no manner control the conduct of the nominal obligee, and with respect to whom the latter is a mere trustee.'

"Also in the case of *City of Philadelphia* (*to Use of Rose Brick Mfg. Co.*) v. *Stewart*, 195 Pa. 309 [45 Atl. 1056], it was held that a city may sue in its own name to use of the persons for whose security it was given, on a bond given it by a contractor for city work conditioned that he shall pay for labor and material furnished therefor and shall comply with an ordinance for protection of subcontractors as well as laborers and materialmen. It was held in that case that 'the city recovers on its legal title, though the money may ultimately go to the use of plaintiffs.'"

It seems to me that the order of dismissal of the appeal of the city should be vacated if it is legally possible to do so. Otherwise the owners of the improvement bonds will be foreclosed of any opportunity to collect any part of the $5,607.08 which the treasurer misappropriated.

We have been cited to no case in which an order dismissing an appeal and recalling a *remittitur* has been made under the precise facts now before us. Numerous cases are in the reports in which such orders have been vacated when actual fraud has been practiced on the court. (See *Trumpler* v. *Trumpler*, 123 Cal. 248 [55 Pac. 1008, 1009].) In that case it was said that the order vacating the order of dismissal was not made "upon the principle of resumption of jurisdiction, but upon the ground that the jurisdiction of the court cannot be divested by an irregular or improvident order." While this expression, or others of similar import, run through the cases the courts have not been called upon to define their application to cases where actual fraud did not appear. When applied to the facts of the cases in which they were used they appear to be *dicta*.

In the instant case no actual fraud existed in connection with the dismissal of the appeal by the city and none is even suggested by any part of the record before us. All counsel and the parties, including the officers of the City of Riverside, very evidently acted in the best of good faith in the dismissal of the city's appeal. They all believed that the bondholders could protect themselves in direct actions against the treasurer and the surety. This was strongly urged in the opening brief filed by the city. Entertaining this opinion the city accepted payment from the surety of the amount due to its general fund and dismissed its appeal, confidently assuming that it was not further interested in the

controversy. We have held that the bond owners cannot so recover. This problem was not easy of solution and our conclusions were reached only after extensive study and lengthy consideration.

The precise question under the exact facts here presented has not been decided in this state. Counsel might easily and with honesty disagree upon the law applicable as the question has not been settled in California, and respectable authority from other jurisdictions is found upholding the right of the bond owners to recover from the surety. The good faith of the city attorney of the city is shown in the following quotation from a letter filed in reply to the motion for an order vacating the order of dismissal: ''If the first motion made by the city to dismiss the appeal against it, be granted, the city has no interest (except general) in the questions raised in this brief of *amici curiae,* but if the motion should be denied, the city will urge the court to grant the motion of the bond company setting aside the dismissal heretofore entered on the cross complaint and give the city an opportunity to answer the brief of *amici curiae.* In other words, if the question of the direct liability of the city to the bond company is to be seriously considered by the court, counsel for the city wishes it to be in the position where it may protect itself by urging the liability of the casualty company to the city.''

It is easy to say that at the time the appeal of the city was dismissed ''this court was in possession of all the facts in connection with the appeal and was fully advised in the premises.'' While this is legally true, as we are presumed to have knowledge of all of our records, it is factually incorrect. The case had not been calendared nor otherwise called to our attention until the presentation of the stipulation to dismiss, which was regular in form, and the order followed. None of the members of this court *actually* knew anything of the facts of the case, the issues to be presented, nor the result of the dismissal in its effect on the chance to recover for the bond owners. To that extent the order of dismissal may be termed an ''improvident order''. (*Trumpler* v. *Trumpler, supra.*) However, I am willing to concede that a mistake of law on the part of counsel, or the members of this court, no matter how honestly made, does not of itself, and standing alone, furnish sufficient ground for the

granting of plaintiff's motion to vacate the order dismissing the city's appeal.

We have before us a somewhat novel and unusual situation. The city had a claim against the surety for the money belonging to the general fund which the treasurer had misappropriated. It also seemingly had another and distinct claim against the surety for the money which the treasurer had abstracted from the 1911 improvement bond redemption fund. This second claim was equitable in its nature. The bond owners were the beneficiaries of the trust. Many of them are not parties to this action. The city accepted payment from the surety of the amount due it by reason of the misappropriation of funds by the treasurer from its general fund and proceeded to dismiss its appeal. The money taken from the general fund belonged to the city. The money taken from the 1911 improvement bond redemption fund did not belong to the city when we use the expression in the sense that it possessed the complete ownership. It held the money as trustee for the benefit of the bond owners. The results of the entire transaction may be summarized as follows: The two claims of the city against the surety were separate and distinct, one from the other, though both arose under the same undertaking. The city compromised and settled its own claim against the surety and received payment. It did attempt to enforce its claim as trustee, but dismissed its appeal, thereby defeating any chance of recovery by or for the bond owners who received no benefits but lost their rights of a possible recovery from the surety by the procedure followed.

In my opinion a trustee cannot be permitted such freedom of action with the trust estate when the party with whom it is dealing is charged with notice of the facts. The trustee cannot directly or indirectly deal with the trust estate to its own benefit and the detriment of the beneficiaries. (25 Cal. Jur. 136, and cases cited.) The surety had knowledge of all these facts, and, possessing such knowledge, it cannot act in conjunction with the trustee to deprive the beneficiaries of any rights they might possess, for under such circumstances the court will not "enter into any examination of the honesty of the transaction" (*Western States Life Ins. Co.* v. *Lockwood*, 166 Cal. 185 [135 Pac. 496]), but will regard it as void. In 25 California Jurisprudence, page 223, it is said:

"If the transferee had knowledge of the trust, it is of no importance that he acted in good faith or without intention of perpetrating a wrong; his motive or intention cannot affect the rights of the equitable owner."

 Freely conceding that both the city and the surety and all their officers and agents acted honestly and with the best of good faith in making the settlement, and dismissing the appeal, I am of the strong conviction that their act of procuring the dismissal was just as void as though actual fraud had been proven. The same results were accomplished. Having reached this conclusion it necessarily follows that the order should be vacated under the rule laid down in *Trumpler* v. *Trumpler, supra.* I must regard the order of dismissal as improvidently made and as a nullity, and the order vacating the order of dismissal, not as a resumption of jurisdiction, but as the assertion of a jurisdiction of which this court has never been divested.

The motion of the City of Riverside to dismiss the appeal of the Municipal Bond Company is denied.

That portion of the judgment from which the appeal of the Municipal Bond Company is taken is affirmed.

The motion to vacate the order which dismissed the appeal of the City of Riverside is granted, and that order is vacated, and the *remittitur* issued on August 9, 1933, is recalled.

Barnard, P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on May 21, 1934, and an application by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 22, 1934.

Shenk, J., dissented.