[L. A. No. 816.   Department One. — September 30, 1901.]

FRANK ELLIS et · al., . Respondents, v. H. C. WITMER

et al., Appellants.

134  249
147  562
134  249|
s148 530|

Street-improvement — Advertisement for Bids — Order to Readver-
tise — Designation of Newspaper. — Where the original notice for
bids was properly advertised and posted, a subsequent order to re-
advertise for bids, without designating any newspaper, must be con-
strued as referring to the original order for its terms.

Id. — Necessity for Readvertisement — Limitation of Time — Pre-
sumption. — A readvertisement for bids is not necessary, unless the
original order limited the time for bids; and it cannot be presumed
that a time was limited therefor, where it is not so made to ap-
pear.

Id. — Antedated Bond for Unpaid Assessments — Delay in Minis-
terial Acts. — The bonds to be issued by the city treasurer for
the amount of unpaid assessments should be issued and dated at
the expiration of the thirty-days' credit allowed by the Street-im-
provement Act from the date of the warrant; and where, by reason
of delay in the ministerial acts to be performed by the city treas-
urer, a bond was not issued until after that date, it was properly
dated as of the date when it should have been issued.

Id. — Sale under Delinquent Bond — Irregularities — Relief in
Equity — Payment of Sum Due. — Where it appears that the
assessment and bond were valid, a sale under a delinquent bond
cannot be annulled in equity for irregularities in selling under the
bond for an excessive amount, or upon insufficient notice, or at an
improper place, or upon a defective certificate, unless on condition
of paying the sum due.   Where no such condition was imposed by
the court, and there is no offer in the complaint to pay what is due,
a judgment annulling the sale must be reversed.

Id. — Sale for Principal and Interest of Bond. — A sale for the
principal and the interest of the bond to the date of sale is not for an
excessive amount.   The bond does not cease to bear interest after
it becomes delinquent.

Id. — Insufficient Notice of Sale — Persons Delinquent not Named.
— A notice of sale, not conforming to the requirements of section 41
of the act of 1891, and of section 3764 of the Political Code, referred
to in the Street-improvement Act, and omitting the names of the
persons delinquent, is fatally insufficient.   The fact that the names
of the persons delinquent cannot be ascertained from the bond is
not material, since they can be ascertained from the proper records.

Id. — Place of Sale. — The place of sale under a delinquent bond, as-
suming that it was to be determined by the provisions of section
3768 of the Political Code as it stood prior to its repeal, must be
" in front of the court-house, or in front of the tax-collector's office,"

as the board of supervisors may by resolution have directed, for all state and county taxes. The board cannot authorize such sales to be made "in the tax-collector's office."

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. Waldo M. York, Judge.

The facts are stated in the opinion of the court.

Lynn Helm, for Appellants.

Goodrich & McCutchen, for Respondents.

THE COURT. — Appeal from a judgment for the plaintiffs and from an order denying the defendants' motion for new trial.

The plaintiffs are the owners of a tract of land in the city of Los Angeles, described in the complaint, on which a street-assessment had been levied, and a bond issued to one Donegan, to secure the same, under the provisions of the Street-improvement Act of March 18, 1885, as amended March 17, 1891 (Stats. 1891, p. 116), and the bond having become delinquent, the property was sold by the city treasurer, and the certificate of purchase assigned to the defendant Witmer. The suit was brought to annul the assessment, bond, and certificate of sale, and to enjoin the issue of a deed by the treasurer.

On the trial the only evidence introduced by the plaintiffs was "the stipulation of counsel that between the nineteenth day of December, 1892, and the first day of January, 1893, the city treasurer of the city of Los Angeles made out and signed said bond set forth in the amended complaint of plaintiffs, and thereafter, on the third day of January, 1893, delivered the same to the said Donegan." On behalf of the defendants, evidence was offered to the effect that on or about June 9, 1893, in an action brought by Witmer Brothers, the city treasurer was enjoined from making a sale of an undivided five-eighths of the premises assessed, pursuant to notice to the treasurer given by Donegan, March 23, 1893, and that the injunction was not dissolved until November 29, 1897. It was also stipulated, in effect, that at the time of the assessment and issue of the bond the title to an undivided five-eighths of the premises assessed stood in the name of one Sullivan, and the remaining three eighths in the grantors of the plaintiffs, and

that the partition of the land—by which the plaintiffs became
the owners in severalty of the land described in the complaint
—took place after the bond was issued.  This was the only
evidence in the case, and it is conceded by the respondents that
it was insufficient to sustain some of the findings.  But it is
claimed that the judgment is sustained by the admitted facts
of the case, and that, as the result could not be changed on a
new trial, there was no error in refusing it.  The points made
by the respondents are,—1. That there was no sufficient order
for the publication of notice for bids; 2. That the bond . . .
was invalid, because antedated; 3. That the sale was void for
various reasons, and the certificate of sale invalid; and 4. That
the special defense set up in the answer is insufficient, and
not sustained by the evidence.  The facts relating to the several
points will be stated as we consider them.

1. With regard to the advertisement for bids, there were
three publications, all in the Los Angeles Times.  The first
was under the ordinance, or an order, directing publication in
that paper, and posting, and was admittedly sufficient.  The
others were published and posted under subsequent orders of
the council, directing the clerk " to readvertise for bids " for the
work.  The Donegan bid was received subsequently to the
last publication; and it is claimed there was no sufficient
order designating the newspaper for the publication, etc., as
required by section 5 of the Vrooman Act.  But it is not dis-
puted that the first order was sufficient, and—assuming that
another order was necessary—the subsequent order to re-
advertise, we think, must be construed as referring to the
original order for its terms.  This is the most obvious and
natural construction of the order; and no reason can be sug-
gested why it should be so construed as to make it void.  The
cases cited by respondents' counsel have, therefore, no applica-
tion.  In none of them was there any order directing the pub-
lication.  (*Meuser* v. *Risdon*, 36 Cal. 239; *Chase* v. *Treasurer
etc.*, 122 Cal. 545; *Donnelly* v. *Tilman*, 47 Cal. 40; *Donnelly* v.
*Marks*, 47 Cal. 187; *City of Napa* v. *Easterby*, 61 Cal. 509.)  It
may he added that, as the case is presented, it does not appear
that, after the first, any other order or publication of notice
was necessary.  All that is required by section 5 of the
Vrooman Act is that the notice should be once published.
There is no provision for republication, except in the special
case provided for; nor is it required that the notice should

limit the time within which bids would be received. No doubt, it was competent for the council to prescribe such limit; and, perhaps, had·such a limit been prescribed, a readvertisement would have been necessary. But in the case as presented it does not appear, nor can it be assumed, that a time was limited for the reception of bids.

2. The objection to the date of the bond is untenable. Under the provisions of section 10 of the act, it is the duty of the street superintendent, upon the return of the warrant, to record it forthwith, and under the provisions of section 40, thereafter, and after the expiration of thirty days from the date of.the warrant, to certify a complete list of the unpaid assessments (amounting to fifty dollars or more) to the city treasurer, whose duty it is, "thereupon," to make out and issue ,the bonds. Assuming the warrant to be returned within thirty days of its date, and that the officers act promptly, the bonds will be issued on expiration of the thirty days from the date of the warrant, and they must be regarded, therefore, as due on that date. Naturally, however, and often from necessity, delays will occur; and such were doubtless contemplated by the statute. But it cannot be supposed that it was the intention of the legislature that the rights of the contractor should be affected thereby. The case is therefore one for the application of the doctrine of relation, and the bond, whatever be the date of its actual issue, must be regarded as taking effect, and may therefore be dated as of the date of its proper issue. (*Gibson* v. *Chouteau,* 13 Wall. 101.) And this is very clearly implied in the form of the bond given in the act, which makes the interest and the term of the bond to run "from its date." Hence, in order to give effect to the assessment, — which, "with accrued interest," is declared to be a lien upon the property affected thereby, — the bond must necessarily be dated as of the date on which the assessment becomes due. This, in ordinary cases, is the date of the return of the warrant, after which it is provided that the amount unpaid shall draw interest at ten per cent per annum. (Vrooman Act, sec. 10.) But in the case under consideration the period for payment is extended to the expiration of thirty days from the date of the warrant, which must therefore be regarded as the date of the maturity of the assessment. In the case at bar, the date of the warrant was November 4th, and of its return, December 3, 1892; and the issue of the bond was therefore due December 5, 1892; and

though by reason of delay in the ministerial acts to be performed the bond was not made out and issued until some time afterwards, it was properly dated as of that date.

3. The sale is attacked on the grounds, that the amount for which the land was sold was excessive; that the notice of sale was insufficient; that the place of sale was not as prescribed by law; and that the certificate of sale is defective. But there is a preliminary objection that must be first considered.

The assessment and bond being valid, it appears that the plaintiffs are indebted for the amount assessed, or such proportionate part of it as may correspond to their land. This being the case, they cannot successfully invoke the assistance of a court of equity against the irregularities in the sale complained of, unless on the condition of paying what is due from them. (*Esterbrook* v. *O'Brien*, 98 Cal. 671; *Quint* v. *Hoffman*, 103 Cal. 506; *Hellman* v. *Shoulters*, 114 Cal. 137; *Weber* v. *San Francisco*, 1 Cal. 455.)   Here, no such condition has been imposed by the court, nor is there an offer in the complaint to pay what is due. The plaintiffs were therefore not entitled to relief. The decision in *Chase* v. *Treasurer etc.*, 122 Cal. 540, does not conflict with this conclusion. In that case the point was made that there was no tender of the tax, and was overruled; but the ground of the decision was, that the assessment was void, and consequently there was no tax to be tendered. (*Chase* v. *Treasurer etc.*, 122 Cal. 544, 545.)

On this account the judgment must be reversed. But, on the case being remanded, the plaintiffs may, if so advised, amend their complaint by offering to pay into the court such portion of the tax as may be determined by the court to be due upon their land, which, as the case is now presented to us, would seem to be three eighths of the whole, though we are not to be understood as definitely determining this point. In the case of such amendment, the obligee in the bond, D. F. Donegan, or his representative, should be made a party defendant, in order that the right to the money, as between him and the defendant Witmer, may be determined. Though this will be unnecessary, if it be shown that the defendant Witmer has succeeded to the interest of Donegan in the bond. If the complaint be not amended, judgment should be entered for the defendants. In view of the conclusions we have reached, it will be unnecessary to determine the objections to the sale, except

in so far as may be proper to direct the future proceedings in the case.

The principal objection made to the sale is, that it was for an excessive amount. The sale was made by the treasurer, December 31, 1897, after a demand made on him by the contractor, December 4, 1897, the amount for which the land was sold being the principal of the bond ($3,168.10) and interest ($1,267.24), aggregating $4,435.34. But a previous demand for sale had been made on the treasurer, by the contractor, March 23, 1893, and the land advertised for sale, — this being the sale referred to above as enjoined, — and the point is made by the respondents, that, under the provisions of section 41 of the act (Stats. 1891, p. 119), the bond became delinquent on the day following the first demand, March 24, 1893, and afterwards ceased to bear interest; so that the sale should have been for the principal of the bond only. But the point, we think, is untenable. The statute provides that on the demand being made, "then the whole bond, . . . with its accrued interest, shall become due and payable immediately, and on the day following shall become delinquent." The effect of this provision is simply to make the bond due on the making of the demand, and on the following day, delinquent, leaving its terms otherwise unaffected. The obligation to pay interest therefore continues unimpaired. Nor is this conclusion affected by the remaining provisions of the section, conferring on the treasurer "the powers and duties of tax-collector, in the collection of unpaid state and county taxes," and directing him "to proceed to advertise and sell [the land] by proceedings in all respects the same as provided by law for the collection of state and county taxes," and making applicable to the case "all such provisions and proceedings after taxes have become delinquent, including the certificate of sale, the right of redemption, and the deed, with the respective costs thereof." These do not refer to the obligations of the bond, which are clearly defined by its terms, but merely to the proceedings for collection by sale. The obligee of the bond was therefore entitled to a sale for the interest as well as for the principal. Nor is there anything in the point that the estimated amount of interest was too great. Interest was estimated for five years only, which, counting from the date of the bond, expired three days before the notice, and twenty-six before the sale.

With regard to the notice of sale, the principal objection is,

that it does not conform to the requirements of section 3764 of the Political Code, to which, under section 41 of the act of 1891, the treasurer was required to conform his proceedings. This objection, we think, is well taken. The provisions of the section of the Political Code cited require that the delinquent list (which, in the case of taxes, is part of the notice of sale) "must contain [among other things] the names of the persons . . . delinquent." These are omitted in the notice, and we think the omission fatal. (*Shipman* v. *Forbes*, 97 Cal. 572; *Simmons* v. *McCarthy*, 118 Cal. 622; Cooley on Taxation, 482 et seq.) It is true, as suggested by the appellant, that these names cannot be ascertained from the bond. But we are not at liberty, on this account, to disregard the plain language of the statute. The names of the persons delinquent could have been obtained from the proper records.

With regard to the place of sale, it does not appear from the record that it was not the right place. Assuming, as claimed by the one and admitted by the other party, that the matter is to be determined by the provisions of section 3768 of the Political Code, subsequently repealed (*Ramish* v. *Hartwell*, 126 Cal. 446, 447), the proper place would be "in front of the court-house, or in front of the tax-collector's office, as the board of supervisors [may], by resolution, [have directed], for all state and county taxes"; for, by section 41 of the act of 1891, it is provided that the proceedings shall be as required "for delinquent state and county taxes." But, in the absence of any resolution of the board directing at which of these places the sales should be made, it cannot be determined whether the sale was made at the right place, or otherwise. The resolution alleged in the complaint on information and belief, that sales for state and county taxes shall take place "in the tax-collector's office," was obviously beyond the powers of the board, which extended only to the choice of one or the other of the two places specified in the statute. The objections to the certificate of sale need not be considered.

The judgment and order appealed from are reversed and the cause remanded for further proceedings in accordance with this opinion.

Hearing in Bank denied.