**BRYANT v. COMMISSIONER OF INTERNAL REVENUE.**

No. 9103.

Circuit Court of Appeals, Ninth Circuit.

April 12, 1940.

Thomas R. Dempsey, A. Calder Mackay, and Arthur McGregor, all of Los Angeles, Cal., for petitioner.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and Berryman Green, Sp. Assts. to Atty. Gen., for respondent.

Before DENMAN, MATHEWS, and STEPHENS, Circuit Judges.

DENMAN, Circuit Judge.

The petitioning taxpayer seeks review of a decision of the United States Board of Tax Appeals that interest paid her during the year 1935 on street improvement bonds issued to obtain street improvements in the city of Los Angeles and in the county of Los Angeles was not "Tax-Free * * * Interest upon (A) the obligations of a State, * * *, or any political subdivision thereof, * * *" made exempt from the federal income tax by Section 22(b) (4) of the Revenue Act of 1934, 48 Stat. 680, 686, 687, 26 U.S.C.A. Int.Rev.Acts, page 670.

All the bonds here in question were issued under one or another of four municipal street improvement acts [1] of the California legislature. It is stipulated that all four acts are alike in their pertinent features, that of 1911 under which the city of Los Angeles created certain improvements in its streets being described in this opinion.

The bonds were issued in the process of a statutory plan whereby the city acquired a public and general improvement of the streets and rights of way it owns. Initially, the city contracted with a contractor for the improvement, the obligation of which the statute required the city, in the circumstances here pertinent, to discharge by issuing its bonds and performing the bond obligations. The bonds are payable in annual installments over a period not exceeding 14 years, with semi-annual interest payments. Each bond principal is for the amount of a tax assessment, imposed in invitum by the city's taxing power, on a separate parcel of property which has a special benefit as distinguished from the general public benefit to the city's street system as a whole. The bonds are serviced by the city's exercise of its governmental function of tax collection, its tax moneys so collected being placed in a special fund in the city treasury where it is held by the city and from which it is paid on demand of the bondholder, in effect, in the final discharge of the original contract for the city's improvement. The pertinent details of the several statutory steps, beginning with the resolution of intention of the city's legislative body to contract for the improvement of its street system and issue and service bonds in payment therefor, are hereafter considered.

The Commissioner has stipulated that the bonds here given to the contractors to accomplish the payment of the city's contracts with them are "bonds issued by the City of Los Angeles and the County of Los Angeles in the State of California." (Emphasis supplied).

The Treasury Regulation interpreting the exemption provides: "* * * Obligations issued by or on behalf of the State or Territory or a duly organized political subdivision acting by constituted authorities empowered to issue such obligations, are the obligations of a State or Territory or a political subdivision thereof. Special tax bills issued for special benefits to property, if such tax bills are legally collectible only from owners of the property benefited, are not the obligations of a State, Territory, or political subdivision. The term 'political subdivision', within the meaning of the exemption, denotes any division of the State or Territory which is a municipal corporation, or to which has been delegated the right to exercise part of the sovereign power of the State or Territory. As thus defined, a political subdivision of a State or Territory may, for the purpose of exemption, include special assessment districts so created, such as road, water, sewer, gas, light, reclamation, drainage, irrigation, levee, school, harbor, port improvement, and similar districts, and divisions of a State or Territory." (Emphasis supplied). Art. 22(b) (4)-1, Treasury Regulations 86, promulgated under the Revenue Act of 1934.

The stipulation of the Commissioner that the bonds were "issued by" the city of Los Angeles and the County of Los Angeles bring them within the express wording of the Regulation.

This Regulation thus declaring these bonds, some so stipulated to have been

---

[1] Act of Feb. 27, 1893, Calif.Stats. 1893, p. 33, as amended, repealed Calif. Stats.1933, p. 946; Deering's General Laws of California (1931) Act 8208. Act of Apr. 7, 1911, Calif.Stats.1911, p. 730, as amended; Deering's General Laws of California (1937) Act 8199. Act of June 16, 1913, Calif.Stats.1913, p. 954, as amended; Deering's General Laws of California (1937) Act 8205. Act of June 3, 1921, Calif.Stats.1921, p. 1658, as amended; Deering's General Laws of California (1937) Act 3289.

"issued by" the city and some by the county of Los Angeles through their respective treasurers as their statutorily "constituted authorities", to be obligations of political subdivisions of California whose interest is within the exemption of the Revenue Act of 1934, is similar to the Regulation first promulgated in 1919. Up to that time, it was admitted at the argument, the Treasury Department had regarded such interest as within the exemption. Since then Congress at least eight times has reenacted the exemption. On each reenactment substantially the same Regulation has been promulgated. Such regulations were in force up to the filing of the briefs in this review and we have not been advised that they are not still in force.

The administrative practice at least until 1936, or for more than 22 years, appears to have been to treat as within the statutory exemption interest upon bonds which were not general obligations of the issuing political subdivision but were payable only out of a particular fund.[2] In 1936, two years after the tax year here involved, a contrary opinion was expressed in G. C. M. 16861, XV-2 Cum.Bull. 179 (1936).[3]

■ The established administrative practice of so many years, during which time the exemption was several times reenacted, carries weight as a construction of the statute which is not offset, at least as to' the tax year in question, by the later expression of opinion in G. C. M. 16861, XV-2 Cum.Bull. 179 (1936).

■ In deciding this case, we need not and do not go beyond construing the federal statute. Considering the review apart from the stipulation and the administrative construction, it appears that the statute was intended to exempt interest upon bonds of the character here involved.

The Supreme Court, in 1895, decided the case of Pollock v. Farmers' Loan & Trust Co., 157 U.S. 429, 585, 586, 15 S.Ct. 673, 691, 39 L.Ed. 759, and gave as a basis for holding invalid a federal tax on the interest from municipal securities the reasoning expressed by Chief Justice Marshall in

Weston v. City Council of Charleston, 2 Pet. 449, 468, 7 L.Ed. 481, to the effect that: "The right to tax the contract to any extent, when made, must operate upon the power to borrow before it is exercised, and have a sensible influence on the contract. The extent of this influence depends on the will of a distinct government. To any extent, however inconsiderable, it is a burthen on the operations of government. * * * The tax on government stock is thought by this court to be a tax on the contract, a tax on the power to borrow money on the credit of the United States, and consequently to be repugnant to the constitution."

The Pollock opinion, after quoting this matter, goes on to state, page 586 of 157 U.S., page 691 of 15 S.Ct., 39 L.Ed. 759: "* * * Applying this language to these *municipal* securities, it is obvious that taxation on the interest therefrom would operate on the power to borrow before it is 'exercised, and would have a sensible influence on the contract, and that the tax in question is a tax on the power of the states and their instrumentalities to borrow money, and consequently repugnant to the constitution." (Emphasis supplied).

The Pollock case was decided prior to the adoption in 1913 of the Sixteenth Amendment, but in distinguishing between the invalidity of taxation of the bond interest and the validity of taxation of the profit from the sale of bonds, the Supreme Court quotes in the subsequent case of Willcuts v. Bunn, 282 U.S. 216, 227, 51 S.Ct. 125, 75 L.Ed. 304, 71 A.L.R. 1260, the language of Chief Justice Marshall appearing in Weston v. City Council supra.

It appears from congressional reports and debates that not only was the exemption enacted and reenacted because of doubt as to the effect of the Sixteenth Amendment on a source of income previously declared immune by the Pollock case,[4] but also on grounds of policy[5] apart from the constitutional question. As recently as 1938 apprehension was expressed in terms of road districts, sewer districts and the like, that a tax on the interest from state

[2] O.D. 447, 2 Cum.Bull. 93 (1920); O. D. 491, 2 Cum.Bull. 93 (1920); I.T. 2074, III-2 Cum.Bull. 79 (1924). Cf. G. C.M. 13469, XIII-2 Cum.Bull. 125 (1934); 30 Op.Att'y Gen. 252 (1914); 38 Op.Att'y Gen. 563 (1937).

[3] In I.T. 2991; XV-2 Cum.Bull. 258, O. D. 447 and O.D. 491 were revoked.

[4] 50 Cong.Rec. 508, 1261-63; H.Rep. No.767, 65th Cong., 2d Sess. 9; Sen.Rep. No.617, 65th Cong., 3d Sess. 6; H.Rep. No.1037, 65th Cong., 3d Sess. 48.

[5] Sen.Rep.No.617, 65 Cong. 3d Sess. 6; H.Rep.No.1037, 65th Cong., 3d Sess. 48; 83 Cong.Rec. 5181-83; 50 Cong.Rec. 508, 1261-63.

and municipal securities would burden the borrowing power of the states and their political subdivisions, whether or not that burden be regarded as one forbidden by the Constitution. [6]

 Respondent contends that the bonds here involved are private rather than public in character, that they were not issued in the exercise of governmental borrowing power, but represent borrowing by private individuals. It seems to us this contention disregards realities.

Not only are the bonds public in character, they were issued in the performance of an essential govermental function. We are not concerned here with bonds to repay money borrowed to create works of a proprietary character from whose income for services rendered the bond principal and interest are paid. The borrowing here is on the pledge of governmental taxing power for improvement of streets and roads held, in California, in a governmental and not a proprietary capacity. McNeil v. City of Pasadena, 166 Cal. 153, 155, 135 P. 32, 48 L.R.A.,N.S., 138. Cf. Brush v. Commissioner, 300 U.S. 352, 371, 373, 57 S.Ct. 495, 81 L.Ed. 691, 108 A.L.R. 1428.

 Our succeeding extended consideration of the statutes under which these bonds were created and of the decisions of the California courts showing that they were issued in the exercise of governmental taxing power to support governmental borrowing for the creation of governmental improvements, is made in pursuance of the principle stated by the Supreme Court that "State law creates legal interests and rights. The federal revenue acts designate what interests or rights, so created, shall be taxed." Morgan v. Commissioner, Jan. 29, 1940, 60 S.Ct. 424, 426, 84 L.Ed. ——.

It is safe to say the great majority of the streets in all California cities in the last several decades have had their improvements through the issuance of bonds of the character here involved. What is true in California is true of the city streets in many states throughout the Union under legislation similar in character, of which Commissioner v. Pontarelli, 7 Cir., 97 F.2d 793, and Commissioner v. Carey-Reed Co., 6 Cir., 101 F.2d 602, 121 A.L.R. 1272, furnish examples.

When Congress enacted the exemption in 1913 there must have been outstanding hundreds of millions of dollars in such bond obligations. We believe Congress had in mind such bonds issued by American cities and that they come within the criteria it established for "the obligations of a State * * * or any political subdivision thereof, * * * *" in its successive income tax acts. Lyeth v. Hoey, 305 U.S. 188, 194, 59 S.Ct. 155, 83 L.Ed. 119, 119 A.L.R. 410.

At the time the bonds were issued, Article XI, section 12 of the California Constitution, considered in American Company v. City of Lakeport, 220 Cal. 548, 555, 32 P.2d 622, provided for the creation of the municipal taxing power which supports the bonds: "Taxes for local purposes. The legislature shall have no power to impose taxes upon *counties, cites,* towns or other public or municipal corporations, *or upon the inhabitants or property thereof,* for county, city, town or other *municipal purposes,* but may, by general laws, vest in the *corporate authorities* thereof the power to assess and collect taxes for *such* purposes." (Emphasis supplied). Constitution of California, Treadwell (1931) Art. XI, § 12.

It is apparent from the provision of the California Constitution that the instant bonds are validly issued only if they are to repay borrowings for a "municipal purpose" as distinguished from a purpose to benefit the private property of the taxpayer. The Commissioner does not question the validity of the bonds and his stipulation admits they are issued by a municipality.

The work that may be done under the 1911 Improvement Act and paid for through the exercise of the taxing power is described in section 2 of that act which provides: "Whenever in the opinion of the city council the *public* interest or convenience may require, it is hereby authorized and empowered" to order the improvement "of the streets * * * *owned by any municipality*" or of property "for the immediate possession and use of which as rights of way required for *public use,* an order has been obtained in compliance with the provisions of section 14 of article I of the constitution of the state of California, * * * *." [7] (Emphasis supplied).

_____

[6] 83 Cong.Rec. 5182, 5183.

[7] Section 14 of Article I of the California Constitution contains provisions with respect to the exercise of the power of eminent domain.

The public purpose of the improvement is again reflected in the provision of Section 40 of the act to the effect that the city council may, at its discretion, provide by resolution that the whole or any part of the cost and expenses of any of the work mentioned in the act be paid out of the treasury of the municipality from such fund as the council may designate.

■ In the leading case of Irish v. Hahn, 208 Cal. 339, 344, 281 P. 385, 387, 66 A.L.R. 1382, [8] we find stated the principles that a city derives its power to levy and collect a special assessment from its power of taxation and that for a valid exercise of the power of special assessment the improvement must be *public* in its nature while also conferring a special benefit upon the property assessed. First in importance in the use of the bond borrowing power is the creation of general benefit for the city as a whole.

■ The California supreme court in emphasizing that in the improvement of streets the work is for a public purpose, treats the benefits to individuals resulting therefrom as incidental. American Company v. City of Lakeport, 220 Cal. 548, 556, 32 P.2d 622. The requirement of benefit to the individual property owner is regarded as so secondary that he is not permitted to show that it will be less than the amount of the assessment. Larsen v. San Francisco, 182 Cal. 1, 9, 186 P. 757.

It is apparent that a district in which the streets were barred by gates to be opened only to the property owners and their permitted visitors could not be built by money borrowed on bonds created and serviced by the city. It is only where the city *as a whole* is benefited, that is, where the "municipal purpose" of Article XI, section 12 of the constitution is served, that it may bind itself for the bond's payment from its tax funds.

■ The first step in the exercise of a municipality's borrowing power is its resolution of intention [9] to issue to the contractor, with whom the city is to make its street improvement contract, [10] its serial bonds with annual installment of principal and semi-annual interest, the interest fixed by the resolution, [11] to discharge the contract obligation when the city has obtained its improvement. The promise so to issue these bonds with their pledge to pay them by the exercise of the governmental taxing power is a necessary implication of the resolution. It is on both of these pledges to assess and collect that the contractor makes his bid for the improvement. The passage of the resolution is essential for jurisdiction for the bond issue, and its absence cannot be cured and the bonds made valid by subsequent legislation. Chase v. Trout, 146 Cal. 350, 366, 80 P. 81. Cf. Gordon v. Ransome-Crummey Co., 37 Cal.App. 755, 757, 174 P. 906.

It is here that the tax on the interest "operates upon the power to borrow before it is exercised." Its "sensible influence on the contract", in taking it from the

---

[8] "From an early day in this state it has been established that a city derives its power to levy and collect a special assessment from its power of taxation. Emery v. San Francisco Gas Co., 28 Cal. [345], 346. * * * Generally speaking, the only limitations upon the exercise of the power of special assessment are that the improvement must be public in its nature, and must confer a special benefit upon the property assessed. Federal Construction Co. v. Ensign, 59 Cal. App. 200, 216, 210 P. 536.

"On the record before us. two major questions are presented: First, was the improvement as constructed a public improvement? And, secondly, was the defendants' property specially benefited thereby? If both these questions be answered in the affirmative, it would necessarily follow that the proceedings in question were valid and the assessment is enforceable, unless the other reasons advanced by the defendants deprived the city of the power to proceed."

"We think both major questions must be answered in the affirmative. It is now generally accepted that, when a municipality, lawfully so empowered, undertakes to furnish to its inhabitants who will pay therefor the utilities and facilities of urban life, it is thereby performing a municipal and public function. See City of Pasadena v. Chamberlain [204 Cal. 653], 269 P. 630; In re Orosi Public Utility Dist., 196 Cal. 43, 235 P. 1004. * * *

"Numerous instances might be cited where similar improvements have been declared to be public and the constitution thereof justified uder special assessment proceedings. * * *" (Citing many California cases, including those treating the Act of 1911.)

[9] California Stats. 1911, p. 730, §§ 3, 61, as amended; Deering's General Laws of California (1937) Act 8199, §§ 3, 61.

[10] Id. §§ 10, 18.

[11] Id. § 61.

wide market for the tax exempt securities, is that it will cause either the contractors bidding for the work to raise their price or the bonds to carry a higher rate of interest.

When the work is completed the municipality through its superintendent of streets [12] assesses against the individual pieces of property also benefited by the improvement a tax which becomes a lien thereon. [13] The bonds are for the amount of the unpaid assessment on each parcel assessed. [14]

■ In so creating the district, in the levying of the assessment and issuance of the bonds to be paid by the city from its tax collected fund, hereafter considered, a direct contractual relationship arises between the city and the bondholder. County of Los Angeles v. Rockhold, 3 Cal. 2d 192, 200, 44 P.2d 340, 100 A.L.R. 149.

The assessment is in invitum, being valid though all the district property owners protest at the hearing before the city council which the statute provides for such protests. [15]

The contractor after completing his contract with the city first receives a tax bill or warrant and has thirty days within which to attempt to collect the tax. [16] If the property owner fails to pay it and does not state to the city treasurer before the bonds are issued that he does not desire to have his land subject to the bond [17] the city must issue it to the contractor. [18] It is apparent that if the property owner has not the money to pay the entire assessment imposed on him in invitum he will not prevent the issuance of the bond with its future installments of principal and interest and submit his property to an immediate foreclosure for the total amount due, unless he relies upon some legal defect in the street improvement proceeding. Such contests are the exception. In nearly every case the city's contract for its improvement is paid by collection through the tax bill or by the discharge of the bond obligation.

The municipality issues to the contractor a sufficient number of bonds to have the sum of their principal amounts equal the amount due on the contract. Many of the bonds are for very small sums. A minimum principal is $25 [19] which, on a ten-year payment, requires an annual tax collection by the treasurer of but $2.50 with a first (and largest) semi-annual interest at, say, 6 percent, or 75 cents. These bonds were transferred by the contractors and they finally reached the hands of the petitioner in this review.

When we consider the small amounts involved, it is absurd to assert that what the contractor or his "order" looks to in determining his contract price is the mere right to realize on the tax lien by a process of either governmental tax sale or judicial foreclosure. By either method the collection expenses or legal fees in a very large percentage of cases would exceed the total principal and interest. What moves the contractor to construct the municipal improvement is the anticipated performance of the city's obligation to collect the tax, place it in the fund in the city treasury, hold it there and pay it over on the demand of the bondholder.

The statute of 1911 requires the municipality to service the bond obligation of principal and interest by the exercise of the governmental power of collecting the tax from the owner of the liened property. The statute requires the city treasurer as tax collector to send his notices of the amount due and to be collected 15 days before the date of the semi-annual interest payment date. [20] Upon collecting it he places it in a special fund in the city treasury for each bond issued [21] from which he must pay it on the bondholder's demand.

If the municipality fail to collect the tax and default in payment of its bond, the bondholder either may compel it to collect the tax and deposit it in the fund by the exercise of its governmental function of a tax sale, [22] or he may foreclose in a court proceeding. [23]

---

[12] Id. § 21.
[13] Id. § 23.
[14] Id. § 62.
[15] Id. § 21.
[16] Id. §§ 62, 22–25.
[17] Id. § 65.
[18] Id. § 63.
[19] Id. § 63.

[20] Id. § 62.
[21] Id. § 60.
[22] Id. § 67.
[23] Calif.Stat.1911, p. 730, § 76a, as added by Calif.Stats.1929, p. 1306; Deering's General Laws of California (1937) Act 8199, § 76a.

If there be a failure to levy the assessment, the bondholder may compel it by mandate.[24] In servicing them the city treasurer *must* act as the agent of the municipality for, as seen, the taxing power can be exercised only by the municipal corporation for the general "municipal purpose" of the improvement. He is such an agent when he collects the tax and pays it into the fund. If he collects it and holds it otherwise than in the fund mandate will compel him to place it there.[25] If, while as such agent, he refuses to advertise the tax sale to supply the fund mandate also will lie against him.[26] All the strict construction of tax sale procedure and of tax deeds apply to the city's treasurer's acts.[27] If the treasurer has the collected tax in the fund and refuses to pay it over, mandate also will lie.[28]

All of these rights to the writ of mandate exist in the bondholder because the bonds are issued by the city in the exercise of a governmental power delegated to the municipality for the improvement, regulation and control of the highways within its boundaries.

In 1913, in construing the Vrooman act, an early statute for street improvement similar to the Street Improvement Act of 1911, the Supreme Court of California held, in McNeil v. City of South Pasadena, 166 Cal. 153, 155, 135 P. 32, 33, 48 L.R.A.,N.S., 138. " * * * The improvement, regulation, and control of the highways within a municipality call for the exercise of a delegated governmental power, a function which the municipality itself, neither by ordinance nor by contract, can surrender or impair."

In 1938 the Supreme Court of California, in Gibson Properties Co. v. City of Oakland, 12 Cal.2d 291, 301, 83 P.2d 942, 947, reaffirmed that holding in a suit seeking to make the city liable for damages claimed because of changes in the design and construction of a building made by the company in anticipation that a street opening proceeding, later abandoned, would be carried through to completion. In deciding in favor of the city the court based its decision on its holding: "That the city in the improvement of its highways is acting in a governmental capacity is held in McNeil v. City of South Pasadena, 166 Cal. 153, 135 P. 32, 48 L.R.A.,N.S., 138, and Municipal Bond Co. v. City of Riverside, 138 Cal.App. 267, 274, 32 P.2d 661." [29]

We can see no difference pertinent to the taxing claim of the Commissioner between these Los Angeles bonds and those of Chicago, also payable from a special fund, whose interest was held exempt from income taxation in Commissioner v. Pontarelli, 7 Cir., 97 F.2d 793, and of the Kentucky cities, also payable from special funds, and held exempt in Commissioner v. Carey-Reed Co., 6 Cir., 101 F.2d 602.

The form of the bond is set forth in the statute requiring the performance of all these municipal acts in creating and servicing it. They are its implicit obligation as much a part of the bond as those it expressly assumes.[30] It is signed by the city's

---

[24] Cf. American Company v. City of Lakeport, 220 Cal. 548, 565, 32 P.2d 622.

[25] Fox v. City of Pasadena, 9 Cir., 78 F.2d 948, 950.

[26] Oakland St. Impr. Bond Co. v. Fitzmaurice, 47 Cal.App. 258, 190 P. 499.

[27] Ellis v. Witmer, 134 Cal. 249, 66 P. 301; Los Angeles Olive Growers' Ass'n v. Pozzi, 167 Cal. 454, 140 P. 581; Shipman v. Forbes, 97 Cal. 572, 32 P. 599.

[28] Meyer v. Porter, 65 Cal. 67, 70, 2 P. 884. See Meyer v. Widber, 126 Cal. 252, 255, 58 P. 532; Meyer v. City and County of San Francisco, 150 Cal. 131, 134, 135, 88 P. 722, 10 L.R.A.,N.S., 110.

[29] Cf. Municipal Bond Co. v. City of Riverside, 4 Cal.App.2d 442, 447, 41 P. 2d 215, 217, where the court held that the city became a trustee for the bondholder with a right to sue the official bondsmen of its city treasurer for his misappropriation of the tax collected money for the street improvement bond fund because he

had received it as "an officer and agent of the municipality." In the preceding appeal in the same case the court, relying on McNeil v. City of South Pasadena, 166 Cal. 153, 135 P. 32, 48 L.R.A.,N.S., 138, held that the bond was issued by the city in performance of its purely governmental function of the improvement of its streets. Municipal Bond Company v. City of Riverside, 138 Cal. App. 267, 274, 32 P.2d 661.

[30] The petitioner's bond here discussed is for a total principal of $117.49 with an annual installment of principal of $13.05, and reads in part:

"117 and 49/100 No. 1
 "In the City of Los Angeles
 "County of Los Angeles, State of
 California

"Under and by virtue of an Act of the Legislature of the State of California entitled 'An act to provide for work in and upon streets, * * * and providing for

treasurer who promises to pay the bond from the taxes collected and paid into its fund and not otherwise. The clause reads: "This bond is payable *exclusively from said fund,* and neither the *municipality* nor any officer thereof is to be holden for payment *otherwise* of its principal or interest." (Emphasis supplied).

In our view the municipality *is* "holden for payment" from its tax collected moneys in its fund for the creation of its "public improvement" (Irish v. Hahn, supra, 208 Cal., page 344, 281 P. page 387, 66 A.L.R. 1382), and the bond is nonetheless an obligation of the municipality because it is not obligated to pay "otherwise" than from such a tax collected fund. From the standpoint of the taxation of the interest as upon an obligation of the municipality we can see no difference between the income of this bond interest and interest on money lent to a borrower who agrees to pay interest and principal only from the income from his apartment house which he mortgages to secure the loan.

The Commissioner's contention, in effect, is that the bond is entirely an obligation of the owner of the land upon which the tax assessment is laid in invitum.

His argument is based on an interpretation of the provision of the bond that since the municipality is not to be holden for payment of principal or interest "otherwise" than from its tax moneys in the fund, it is *not* holden to pay them to the bondholder at all. We see no merit in this contention. It ignores the fact that no contractor would make the same bid for the construction of the public improvement, if all he were to receive is the right to foreclose or have a tax sale of individual pieces of property, securing each of a bundle of bonds paying him small amounts. As was held by the Supreme Court in Weiss v. Stearn, 265 U.S. 242, 254, 44 S.Ct. 490, 492, 68 L.Ed. 1001, 33 A.L.R. 520, " * * * when applying the provisions of the Sixteenth Amendment and income laws enacted thereunder we must regard matters of substance and not mere form."

The Commissioner thus ignores the fact that the *municipality* by issuing the bond with its accompanying statutory obligations, in effect, promises, first, to exercise it governmental power of tax collection for the fund and, second, to pay the bondholder from the fund which makes possible the particular contract for the municipality's public improvement and that under Irish v. Hahn, supra, and Article XI, section 12 of the constitution of California, no such taxing power exists in the municipality unless for a "public" benefit for the city as a whole as well as a "private" benefit to land holders in the improvement of the city's streets.

The Commissioner's briefs do not mention Irish v. Hahn and rely on dicta in earlier California decisions in suits discussing the power to make "holden" the city or the state "otherwise" than on the promise to pay from the bond fund. These are Meyer v. City and County of San Francisco, 150 Cal. 131, 134, 88 P. 722, 10 L.R.A.,N.S., 110; Union Trust Co. v. State of California, 154 Cal. 716, 725, 99 P. 183, 24 L.R.A.,N.S., 1111, and Brookes v. City of Oakland, 160 Cal. 423, 117 P. 433.

These cases hold no more than that if the municipality has not collected the tax for the fund the city or state is not liable to pay the bonds from its *general* fund, or that special assessment liabilities are not included in a tax limitation on general obligations.

The Commissioner's cases do not and could not hold that the municipality, in obtaining its general improvements by its bond promises to collect the tax and pay the bondholder from the bond fund, is any the less engaged in borrowing than is one who obtains a loan with a promise to repay it from the income of a specific parcel of the borrower's property which is mortgaged for the debt.

the issuance and payment of Street Improvement Bonds to represent certain assessments for the cost thereof, and providing a method for the payment of such bonds,' approved April 7, 1911, and acts amendatory thereof, I, out of the fund for the above designated Street Improvement Bonds, Series No. Six, will pay to Griffith Company or order the sum of One Hundred Seventeen and 49/100 Dollars ($117.49), with interest at the rate of seven (7%) per cent per annum, all as is hereinafter specified and at the office of the Treasurer of the City of Los Angeles, State of California. * * *

"This Bond is **payable exclusively from said fund,** and neither the **municipality** nor any officer thereof is **to be holden for payment otherwise of its principal or interest. * * *.**" (Emphasis supplied).

18

To the suggestion that special assessment taxes, each imposed on *a part* as distinguished from all taxable real property in the municipality, do not diminish its borrowing power, the answer is that such taxes always have and that the depression period has given a devastating demonstration of that fact.

 The origin of any municipality's borrowing power is in its power to exercise the governmental function of taxation of property in its area. The cumulation of tax liens of all kinds on the real estate in municipalities led to the so-called "tax strikes." Delinquent tax sales to the state and its subdivisions withdrew large areas from municipal taxation. From such strikes and such loss of taxable property ensued the municipal bankruptcies of the last decade.

In California a municipality may have its taxable property subject at one *time* to bond payments by taxation of a street district, a sewer district, a lighting district, a reclamation district, a drainage district, an irrigation district, in addition to state, county and general taxation.

Each tax invasion on the municipality's taxable property causes a lessening of borrowing power, until, as stated, many municipalities cannot borrow to keep themselves out of bankruptcy. The Supreme Court in United States v. Bekins, 304 U.S. 27, 48, 58 S.Ct. 811, 814, 82 L.Ed. 1137, recognizes the condition in California as stated by its legislature: " 'There exist throughout the State of California economic conditions which make it impossible for property owners to pay their taxes and *special assessments* levied upon real or taxable property. The burden of such taxes and *special assessments* is so onerous in amount that great delinquencies have occurred in the collection thereof and seriously affect the ability of taxing districts to obtain the revenue necessary to conduct governmental functions and to pay obligations represented by bonds. It is essential that financial relief, as set forth in this act, be immediately afforded to such taxing districts in order to avoid serious impairment of their taxing systems, with consequent crippling of the local governmental functions of the State. This act will aid in accomplishing this necessary result and

should therefore go into effect immediately.' " (Emphasis supplied).

The Supreme Court then states "similar conditions existed in other parts of the country." See also County of San Diego v. Hammond, 6 Cal.2d 709, 712, 59 P.2d 478, 105 A.L.R. 1155.

The Commissioner also cites from a tort case arising under the Idaho laws. There the holder of bonds of an assessment district sought to hold the City of Nampa liable from its general funds because its officers had issued a certificate stating that no litigation was pending affecting their validity when, in fact, such litigation existed and ultimately caused them to be declared invalid.

On appeal to this court [31] it held that under the Idaho law the city officers "were exercising a special power vested in them with reference to local improvements, in which the city as a whole is not concerned." The Idaho law in this regard is of no application to these California bonds which cannot be issued if the improvement is not general and are valid only if there be a benefit to the city as a whole. Irish v. Hahn, supra.

On certiorari [32] the Supreme Court held that under the Idaho statutes the city officials owed no duty to the bondholder with respect to the certificate and that the city was not liable. In the opinion, page 541 of 276 U.S., on page 341 of 48 S.Ct., 72 L.Ed. 688, are dicta that the city's "faith or credit is not pledged and that the value of the bond depends upon the validity and worth of the assessments." We take this to refer to the fact that the faith and credit of the *general* funds of the city are not pledged to pay the bonds. If it means that in Idaho there is no obligation of the municipality, first, to exercise its taxing power to collect the tax for the fund and, second, to pay it from the fund so collected to the bondholder, this is not the law of California where, as seen, the bonds are a valid pledge of the exercise of the taxing power only when the improvement created is for the city as a whole and not solely for the assessment district.

 The Commissioner cites California cases holding the taxes assessed and liened on the land for the city's improvement, although imposed in invitum, cannot be in-

---

[31] Moore v. City of Nampa, 9 Cir., 18 F.2d 860, 862.

[32] Moore v. City of Nampa, 276 U.S. 536, 48 S.Ct. 340, 72 L.Ed. 688.

creased by subsequent legislation, because it would violate an implied contractual obligation of the liened land owner. [33] These cases recognize that the bond is supported by the municipality's governmental power of taxation, the exercise of which power we have seen is a part of the bond obligation to the bondholder.

In the most recent case cited by the Commissioner as recognizing the implied contractual character of the property owner's obligation so preventing an increased liability by later statutes, the contract between the bondholder and the municipality as an "agency" of the state is shown to be that controlling the exercise of the taxing power in the formation of the district, the levy of the assessment and the issue of the bond promising to pay from the tax collected fund: "When a district is formed, assessments are levied, and bonds are issued, there is, of course, a *contractual relationship between the state or its agency on the one hand and the bondholder on the other.* It is *also* the settled doctrine in California that by such proceedings, a contractual relationship arises as far as the property owner is concerned." (Emphasis supplied). County of Los Angeles v. Rockhold, 3 Cal. 2d 192, 200, 44 P.2d 340, 343, 100 A.L.R. 149. Here the agencies by which the "bonds are issued" are stipulated to be the county and the city of Los Angeles.

The Commissioner also claims these municipal bonds are mere tax bills or warrants within Treasury Regulations 86, Art. 22(b) (4)-1, which provides, "if such tax bills are legally collectible *only* from owners of the property benefited, [they] are not the obligations of a State, Territory, or political subdivision." Obviously the bond payable from the tax raised fund does not come within this definition of the tax-bill. As we have seen, the act of 1911 itself creates a tax bill called a "warrant" which precedes the issue of the bond. It is of an entirely different character. It is. issued to the contractor by the superintendent of streets and countersigned by the mayor after the city's improvement is completed. [34] It is a mere power of attorney in the contractor or his agent to demand and receive the assessed tax from the individual property owners. The bond with its promise *by the city* to collect the taxes, hold them in the fund, and pay them on the bondholder's demand is issued after the failure of the contractor as a private person to collect the amount due through the tax bill. Whether, despite the Treasury Regulation, such tax bills are such income tax exempt obligations is a matter with which we are not here concerned.

The Board of Tax Appeals' decision erred in sustaining the Commissioner's inclusion in petitioner's taxable income of the interest of the municipality's bonds issued to discharge the obligation of the city's contract for its street improvement and is reversed.

Reversed.

---

[33] County of Los Angeles v. Rockhold, 3 Cal.2d 192, 44 P.2d 340, 100 A.L.R. 149; County of San Diego v. Childs, 217 Cal. 109, 17 P.2d 734; Jeffreys v. Point Richmond Canal & Land Co., 202 Cal. 290, 260 P. 548; Palo Verde Irr. Dist. v. Seeley, 198 Cal. 477, 245 P. 1092; La Mesa, etc., Irr. Dist. v. Halley, 197 Cal. 50, 239 P. 719; Peery v. City of Los Angeles, 187 Cal. 753, 203 P. 992, 19 A.L.R. 1044; Chapman v. Jocelyn, 182 Cal. 294, 187 P. 962.

[34] Calif.Stats.1911, p. 730, §§ 22, 23, as amended; Deering's General Laws of California (1937) Act 8199, §§ 22, 23.